468 So.2d 747 (1985)
The DOW CHEMICAL COMPANY
v.
Freddie H. PITRE, Sr., Sheriff & Tax Collector.
The DOW CHEMICAL COMPANY
v.
The LOUISIANA TAX COMMISSION.
Freddie H. PITRE, Sr., Sheriff, Iberville Parish, Louisiana, et al
v.
The LOUISIANA TAX COMMISSION and the Dow Chemical Company.
Nos. CA 83 1266-CA 83 1268.
Court of Appeal of Louisiana, First Circuit.
April 16, 1985.
Rehearing Denied May 20, 1985.
*748 G. William Jarman, Baton Rouge, Patrick W. Pendley, Plaquemine, for plaintiff-appellant.
Michael R. Fontham & Sarah S. Vance, N.O., for plaintiff-appellee.
Robert H. Abbott, III, Baton Rouge, for defendant-appellee.
Before WATKINS, CRAIN and ALFORD, JJ.
ALFORD, Judge.
This is an appeal from a judgment of the Eighteenth Judicial District Court, Parish of Iberville, rendered in three consolidated cases arising from the 1980 ad valorem tax *749 assessment of equipment, machinery and pipelines owned by the Dow Chemical Company and certain of its subsidiaries in some six parishes. The principal dispute in this case concerns the assessment of Dow's equipment and machinery (major plant facilities) in Iberville Parish. Also in dispute are the assessments of Dow's pipelines in the parishes of Iberville, West Baton Rouge, Plaquemines, Vermillion, St. Mary and St. Martin.[1] Dow, in accordance with LSA R.S. 47:1956, timely submitted to the respective assessors in the six involved parishes the required forms listing its property subject to assessment. After the assessors in the various parishes made their respective assessments, Dow initiated protest proceedings to the local Boards of Review. LSA R.S. 47:1992. In each instance, the local Boards of Review affirmed the assessments as reached by the local assessors. After failing to achieve a reduction in its assessments, Dow proceeded to protest to the Louisiana Tax Commission. LSA R.S. 47:1856.
Pursuant to LSA R.S. 47:1989, the Commission conducted a hearing on Dow's appeal dealing with the appraised and assessed value of Dow's machinery and equipment. The protests relative to the pipeline assessments were consolidated and a separate hearing was conducted since there were multi-parishes involved.
The first issue presented by Dow to the Commission concerned the proper establishment of fair market value (from which the assessments are made) including Dow's assertion that the assessor improperly failed to take into consideration functional and economic obsolescence in valuing its machinery and equipment. The second issue concerned the constitutionality of using different valuation dates for different classes of property in reaching assessments.
The Commission rendered its original decision on March 6, 1981. On the first issue, the Commission noted that the guidelines established to aid assessors in arriving at fair market value provide a four step procedure. The assessor had refused to follow step four (allowing deductions for functional and economic obsolescence) on the ground that Dow had not furnished data to support its contentions as to obsolescence. The Commission decided to accept an independent appraisal presented by Dow supporting its claims as to obsolescence. The Commission decided to accept an independent appraisal presented by Dow supporting its claims as to obsolescence. Based in part on this appraisal, the Commission found that Dow's machinery and equipment had an actual average life expectancy of 18-20 years rather than the 15 year average provided in the guidelines. Dow's physical depreciation would have been accelerated using the 15 year table provided in the guidelines. The Commission was of the opinion that some adjustment would have to be made to compensate for this situation.
Additionally, the Commission found that Dow was operating some of its facilities above their rated capacities. To compensate for this situation, the Commission adjusted the total obsolescence (functional and economic) percentage alleged by Dow (21.7%) downward by 28% resulting in a 15.6% allowance for obsolescence.[2] It is interesting that the Commission noted that application of the 15.6% allowance to the assessor's total represented only a 10% variation from the figure established by the Dow appraisal. The Commission further noted that a 10% variation is within acceptable limits of findings of different appraisers. *750 Applying the 15.6% allowance to the assessor's total, the Commission determined that the fair market value of Dow's machinery and equipment was $179,890,000.00 with a resulting assessment of $26,983,500.00.
Regarding the issue of using different valuation dates for different classes of property, Dow had apparently attacked the constitutionality of LSA R.S. 47:2331. The Commission was of the opinion that it was not empowered to determine the constitutionality of the statute. The Commission noted that LSA R.S. 47:2331 was enacted as a part of the enabling legislation for the implementation of Article 7, Section 18 of the 1974 Louisiana Constitution dealing with ad valorem taxation. Presuming constitutionality, the Commission found that in enacting the statute, the legislature determined two classes of property to be assessed in a uniform manner within each class. The Commission was of the opinion that by calling for reappraisal of personal property every year, the statute was in keeping with the volatile nature of such property.
Upon considering the statute, the Commission noted that its guidelines calling for updating of the guideline tables every four years, and the tables themselves were not in compliance with yearly reappraisal. However, the Commission noted that the tables had been uniformly applied by the assessors and while the method used did not reach a valuation correctly based (under the guidelines) on 1976 = 100%, neither did it exceed the values that would be derived had the tables been updated to 1980 = 100%.
The Commission next rendered a decision on the consolidated multi-parish pipeline cases on March 16, 1981. Again the Commission refused to consider the constitutionality of LSA R.S. 47:2331. The Commission noted that the guidelines tables used by all of the assessors reflect a value of January 1, 1979, rather than January 1, 1980. Thus, while the tables properly applied would not reach a value of January 1, 1980, the Commission would not consider a case by case amendment since the tables had been uniformly applied.
Regarding the fair market value issue, the Commission made numerous findings. First, the Commission found that the information submitted to the assessors by the April 1, 1980, filing date was for the most part based on Dow's inhouse estimates as to mileage and operating function. Additional information ultimately submitted by Dow showed that less than the proper mileage was rendered in some instances and the condition of the lines was shown to be substantially different, in some cases actually abandoned to nonoperable, than that initially alleged by Dow. Second, the Commission found that Dow did not communicate well with the assessors of the various parishes. Third, the testimony established that the lines that were operable were 100% safe. Finally, the Commission found that Dow and its subsidiary, Cayuse Pipeline Co., Inc., agreed that all of the operable lines carry valuable products to Dow's facilities.
Dow had alleged that some of the assessors failed to give recognition to full physical depreciation set forth in the guidelines by using effective age rather than actual age, and failed to recognize economic and functional obsolescence. The Commission noted that the guidelines called for the use of actual age unless it is not applicable in a particular case. If no agreement can be reached by the assessor and the taxpayer on effective age, the burden is on the party claiming effective age (the assessor in this case) to support its use. The Commission found that actual age should have been used for all of the pipelines and made the necessary corrections.
The Commission further noted that the guidelines provide that economic and functional obsolescence are to be taken into consideration on the basis of actual operations as a ratio to design capacity. The figures originally rendered to the assessors has been based on Dow's estimates as to the percentage of operating capacity. At the Commission hearing, Dow presented evidence substantially modifying the original *751 figures along with supporting data. The Commission noted the difficulty, if not the impossibility, of correlating this evidence with the original figures. The Commission found that the mileage figures shown on the calculations exceeded the mileage originally rendered by Dow. Additionally, the Commission found that product lines in particular are designed for peak operations under optimum conditions. From the testimony presented, it became apparent to the Commission that Dow did not expect to operate any pipeline at a rate in excess of 80% of maximum capacity due to normal maintenance and down time. Therefore, the Commission determined that design capacity was not equivalent to maximum flow under optimum conditions in this situation. The Commission went on to find that in this case, design capacity is the equivalent of approximately 80% of the maximum rate of flow. After reaching the above described findings, calculations were made using the guideline tables, actual age and the table for granting economic and functional obsolescence.
Dow, Cayuse (Dow's subsidiary) and the assessor for Iberville Parish, all requested a rehearing before the Commission which was granted. The Commission was presented with three issues: 1) whether or not the constitution and statutes require valuation on a common date for all types of property, 2) whether or not the Commission's determination of fair market value for machinery and equipment in Iberville parish gave full recognition of the functional and economic obsolescence due those facilities, and 3) whether or not the determination of the Commission of the fair market value of machinery and equipment for Iberville Parish and of the pipelines for all of the parishes is a reasonable estimate of fair market value as of January 1, 1980.
By the time of the rehearing, Dow had apparently modified its position on LSA R.S. 47:2331, claiming that the statute was not in conflict with the Constitution. Dow argued that the statute, along with other statutes dealing with ad valorem taxation, did not create classifications, and that the classifications relating to ad valorem taxation created by the Constitution were exclusive. In support of this position, Dow cited portions of the constitutional convention in its attempt to show the intent of the framers. The Commission was of the opinion that no intent was shown by the cited portions of the convention. The Commission further noted that it could find no language in the Constitution or the statutes prohibiting the further classification of property so that similar treatment of similar property could be afforded. It was the opinion of the Commission that all property of a nature similar to that of Dow's had been valued by application of the guidelines to the current year.
Regarding the second issue presented on rehearing, the Commission was of the opinion that its original decision did not properly apply the guidelines because application of a composite multiplier designed to trend prices and take into account physical depreciation does not allow recognition of all obsolescence. In reaching a new decision on fair market value, the Commission first trended original cost to arrive at an estimate of current cost new. Next, this figure was compared to the figures shown in Dow's appraisal. A factor of 20% for all forms of economic and functional obsolescence was applied and a dollar amount computed. The Commission then applied a 20 year life table, reflecting in its opinion the average life of Dow's facilities in Iberville Parish, to the property in question. The above computations resulted in the Commission's finding that the fair market value of Dow's machinery and equipment in Iberville Parish should be reduced to $172,265,117.00. The Commission specifically noted that neither the assessor nor the Commission has the expertise, time or funding to apply the methodology developed in Dow's appraisal on an annual basis to all the chemical facilities in the state.
Finally the Commission found no additional evidence or convincing argument presented regarding the determination of fair market value of the pipelines. The Commission's original determination as to the pipelines was therefore affirmed.
*752 As noted above, three separate suits were filed after the Tax Commission hearings. Trial of these consolidated cases took place on January 17, 18 and 19, 1983, with judgment rendered on August 16, 1983. In District Court suit # 26,232, Dow sued the Sheriff and Tax Collector for Iberville Parish seeking a refund in the amount of $644,276.87 (the amount Dow had paid under protest) plus legal interest, seeking to have LSA R.S. 47:2110 (providing for interest at the rate of two percent per annum to taxpayers prevailing in suits to recover taxes paid under protest) declared unconstitutional and seeking interest on the amount refunded in the amount of six percent per annum. The judgment rendered by the trial court dismissed this suit. Also dismissed in the judgment as rendered was District Court suit # 26,608, wherein Dow sued the Tax Commission seeking a reversal of the Commission's decision not to reduce Dow's assessment to the extent requested by Dow.
In District Court suit # 26,620, brought by the Sheriff and Tax Collector, Assessor and tax recipient bodies of Iberville Parish against Dow, the trial court reversed the decision of the Tax Commission on rehearing and reinstated the assessor's original assessment. Additionally, the trial court released the funds paid under protest by Dow to the tax recipient bodies and affirmed the Tax Commission's assessment of the multi-parish pipelines.
The trial court, in its written reasons for judgment, determined that the intent of Article 7, Section 18, of the 1974 Louisiana Constitution was to require uniformity of taxation as to each type or class of property. It was the opinion of the court that the classification of property pursuant to LSA R.S. 47:2331 was a reasonable implementation of the constitutional objective of uniformity.
Regarding the issue of Dow's machinery and equipment assessment, the trial court first noted that the principal responsibility of assessment is vested in the assessor, with the Tax Commission serving in a supervisory capacity. The court reached the factual finding that Dow unreasonably withheld its private appraisal from both the assessor and the Board of Review. The trial court properly noted that Dow had damaged irreparably its own position by refusing to make the information concerning obsolescence available to the assessor, as the assessor could not consider information that was not made available to him and that he had no means to obtain without Dow's cooperation. Thus, the assessor and Board of Review lacked the required information to grant the relief requested by Dow.
The trial court was of the opinion that the Tax Commission, by accepting and relying upon the information unreasonably withheld from the assessor, had usurped the assessor's authority to make assessments. Based on the above, the trial court reversed the Commission's allowance of obsolescence and reinstated the assessor's original assessment.
On the issue of the pipeline assessments, the trial court noted that its above ruling applied with even greater force because of the inaccuracies as to mileage and the percentage of obsolescence submitted by Dow to the various assessors. Based on the above reasoning, the court affirmed the Commission's decision on the pipeline assessments.

ASSIGNMENT I
Dow's first assignment is that the lower court erred in holding that the Tax Commission could not consider the independent fair market value appraisal offered by the taxpayer to challenge the assessment. We do not agree and affirm the lower court on this issue.
The constitution of 1974 specifies that property subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valuation, which shall be a percentage of its fair market value. La. Const. art. VII, § 18(A). Further, each assessor shall determine the fair market value of all property subject to taxation within this parish or district. This fair market value shall be determined in accordance *753 with criteria which shall be established by law and which shall apply uniformly throughout the state. La. Const. art. VII, § 18(D). The correctness of assessments by the assessor shall be subject to review first by the parish governing authority (which is usually the Parish Police Jury), then by the Louisiana Tax Commission, and finally by the courts, all in accordance with procedures established by law. La. Const. art. VII, § 18(E). (Emphasis added)
In order to facilitate the assessor's constitutional duty to make assessments, the Louisiana Revised Statutes provide that the assessor shall have access to the books and accounts of the property owner. The assessor shall also, if necessary, put under oath the owner, his agents or employees, and propound such questions as will elicit the fair market value of the property. LSA R.S. 47:1957(C). See also, LSA R.S. 47:2324 and 47:2325. LSA R.S. 47:2323 establishes the general criteria for determining fair market value. That section also provides that all uniform guidelines, procedures, rules and regulations necessary to implement the fair market value criteria shall be adopted by the Louisiana Tax Commission.
The Louisiana Tax Commission guidelines require that the assessor employ four enumerated steps in the determination of fair market value. The assessor followed the guidelines through step three, thereby arriving at a value which represented original cost less physical depreciation. The fourth step provides that the assessor deduct allowances for obsolescence, if any, but only after consultation with the property owner and a review of the relevant factors. It is obvious to this court that the statutory framework places the burden on the party claiming a deduction for obsolescence to supply the assessor with sufficient data to support the claim. The assessor maintains that no deduction for functional or economic obsolescence was made because Dow merely submitted the conclusions of an independent appraisal without providing the supporting data. The underlying information sought by the assessor which allegedly supported Dow's claim and which formed the basis of Dow's independent appraisal was designated "Appendix B" of the appraisal report, and was not made available to the assessor.
The record indicates the following chronology concerning the assessor's access to Dow's independent appraisal: Dow submitted its tax reports to the assessor for the April 1, 1980, deadline. At that time the independent appraisal was not available; however, Dow submitted a notation that the appraisal would be forwarded when it became available. By late April of 1980, Dow had the entire 146 page independent appraisal report in its possession. However, in May of 1980 Dow provided the assessor with only a six page "letter report," which was a conclusionary summary of the independent appraisal report. No supporting data was given by Dow at that time. By letter dated July 11, 1980, Dow's tax representative, Rodney Malburg, notified the assessor that Dow's assessment of its property differed substantially from that of the assessor. The assessor answered by letter dated July 17, 1980, explicitly requesting more specific supporting data. Malburg responded by letter dated August 1, 1980, that the information requested by the assessor was confidential and that Dow policy disfavored its dissemination. Malburg added that the assessor could review the information in the Dow office during regular business hours. By letter dated August 13, 1980, the assessor assessed Dow's machinery and equipment at $34,518,437.00 from information supplied by Dow initially. The assessor made no allowance for functional or economic obsolescence because he was of the opinion that Dow had presented no evidence to support such a finding. The assessor also requested that Dow submit any written evidence supporting its contentions by August 22, 1980, (the deadline set in order to allow the Board of Review an opportunity to review the assessment). No additional information was submitted by Dow, and the assessment was subsequently affirmed by the Board of Review as made.
*754 Dow's appraisal was 146 pages long and took its independent appraisers 350 mandays to complete. It was, by its very nature, extremely technical and complex. Further, it is undisputed that Dow refused to provide the assessor with their secret "appendix B" of the appraisal report. Appendix B consisted of the last 83 pages of the 146 page appraisal report. It contained the supporting data for the conclusions reached in the six page letter report and in the first portion of the appraisal report. Although it is true that the assessor was at one point allowed to view Appendix B in Dow's offices and make handwritten notes (but no photocopies), the complexity and technical nature of the supporting data precluded a meaningful and thorough evaluation thereof.
The trial court noted that efforts by the assessor to obtain Appendix B were either resisted altogether or completely frustrated by making access to the information unreasonably onerous. For example, at one point Dow attempted to require the assessor and his employees to sign confidentiality agreements which would make them potentially personally liable for release of Dow's information. The assessor refused, noting that the Louisiana Revised Statutes adequately provided for confidentiality of taxpayer's reports. LSA R.S. 47:2327. Further, after the Board of Review affirmed the assessor's assessment, but prior to the Tax Commission hearing, the assessor propounded a set of written questions to Dow concerning Dow's valuation of its property. Even though LSA R.S. 47:1957(C) authorizes the assessor to propound such questions as will elicit fair market value, Dow refused to answer those questions. The lower court found as fact after full trial and ample opportunity to judge the credibility of the witnesses that Dow had withheld information from the assessor and the Board of Review without just cause. After a careful review and evaluation of the record, it is our opinion that the trial court was not clearly wrong in its finding. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Under the facts of this case, we must conclude that the trial court was correct in holding that the Tax Commission erred in employing Dow's independent appraisal to modify the assessor's assessment. While it is true that the Tax Commission should receive all probative evidence to aid it in its function, that function is specifically designated by the constitution to be one of review, as opposed to assessment. La. Const. art. VII, § 18(E). See also, Bussie v. Long, 286 So.2d 689 (La.App. 1st Cir.1973), writ ref. 288 So.2d 354.
The constitution provides that assessments are to be made by the assessor. It is apparent to this court that Dow was attempting to circumvent the constitutional framework by withholding information from the assessor in an effort to have the Tax Commission make the actual assessment. Apparently, Dow felt that it would be strategically advantageous to have its assessment made by the Tax Commission, due to Dow's deteriorating relationship with the assessor. However, the Tax Commission may not usurp the constitutional authority of an assessor by utilizing factual data which was available to the taxpayer, yet withheld from the assessor. This is not to say, however, that the Tax Commission cannot review and correct an erroneous assessment.
Accordingly, we affirm the decision of the trial court finding that the Tax Commission should not have considered Dow's independent appraisal in its review of the assessment.

ASSIGNMENT II
Dow alleges that the trial court erred in failing to require the Tax Commission and the assessor to recognize the constitutional requirement that all property, both real and personal, be valued as of a common date, in this instance October 1, 1979. In essence, Dow argues that by using one base date for the establishment of fair market value for real property and a later base date (depending on the nature of the personal *755 property in question) for determining the fair market value of personal property, the fixed relationship between all taxable property mandated by Article 7, Section 18 of the 1974 Louisiana Constitution is destroyed. We disagree.
Article 7, Section 18 of the 1974 Louisiana Constitution provides that the assessor shall determine the fair market value of all property, except public service property, subject to taxation within his respective parish or district. Fair market value is to be determined in accordance with criteria established by law and applied uniformly throughout the state. Additionally, all property subject to taxation shall be reappraised and valued at intervals of not more than four years. The actual tax assessment is based upon a percentage (10% in the case of land and 15% in the case of other property, including personal property) of the fair market value. The percentage of fair market value shall be uniform throughout the state upon the same class of property.
As a part of the enabling legislation passed to implement the above constitutional mandate, the legislature in Acts 1976, No. 705, § 12, eff. August 4, 1976, enacted LSA R.S. 47:2331 which provides,
On and after January 1, 1978, all assessments of real property shall be based on a reassessment of all such real property; and such real property shall be reappraised at least every four years thereafter and all assessments of personal property shall be based on a reassessment of all such personal property, and such personal property shall be reappraised every year thereafter.
Both the Tax Commission and the lower court were of the opinion that by enacting section 2331, the legislature determined two classes of property to be assessed in a uniform manner within the class. In support of this conclusion, both the Commission and the lower court reasoned that what was required under the Constitution was uniformity, but given the inherent differences between real and personal property, the two could not be treated the same, and thus, the practicalities of application required the establishment of classes. The Commission specifically noted that the statute, in requiring yearly reappraisal of personal property, was "... in keeping with the volatile nature of such property and recognizes the tremendous changes which occur from year to year, such as additions, deletions and movement from one assessing district to another." We agree.
Dow does not attack the constitutionality of LSA R.S. 47:2331, rather, it is the interpretation given the statute by the Commission and the assessor which forms the basis of Dow's objection. It is Dow's position that once the yearly appraisal of the property is completed, that value must be indexed to the last reappraisal date (October 1, 1976), as provided in the Tax Commission Rules and Regulations, so that all property can be effectively assessed as of the same date.
Dow relies in part on Article 7, Section 18(D) wherein it states in pertinent part, "Each assessor shall determine the fair market value of all property subject to taxation within his respective parish...." It is Dow's position that the quoted language mandates that all property, regardless of classification, be valued as of a common date. We do not believe that such a restrictive interpretation is reasonable given the magnitude of the task sought to be achieved. Section 18(D) further provides in part, "Fair market value ... shall be determined in accordance with criteria which shall be established by law and which shall apply uniformly throughout the state." We agree with the Commission and the trial court that this provision does not limit the authority of the legislature to create classifications necessitated by the practicalities of application arising from the inherent differences in the numerous types of property which must be valued, so long as all property in a given classification is treated alike.
After a review of LSA R.S. 47:2331, the Commission noted that its own Rules and Regulations calling for the updating *756 of the guideline tables in four year cycles, and the guideline tables themselves, were not in conformity with yearly appraisal. However, the Commission further noted that the tables were applied uniformly by the assessors, and while this method did not result in a valuation correctly based on 1976 = 100% (as provided in the guidelines and tables), it did not exceed the values which would have been reached had the tables been updated to 1980 = 100% (as provided by LSA R.S. 47:2331). It is clear from the record that all similarly situated taxpayers were treated in a similar manner and no taxpayer suffered excess valuation from the methods employed by the assessors.
Given that the methods employed by the assessors did not result in a valuation of Dow's property in excess of its 1980 value, and given that all similarly situated taxpayers were treated alike, we refuse to apply the Commission's inadvertently outdated Rules and Regulations in such manner so as not to give effect to the valid expression of the legislature's will encompassed in LSA R.S. 47:2331.

ASSIGNMENT III
Dow alleges that the trial court erred in affirming the Tax Commission's decisions on the multi-parish pipeline assessments. Implicit in this assignment of error are the constitutional concerns over the use of differing valuation dates. Having disposed of those concerns above, we merely note that our position is the same regarding the pipeline cases.
Dow maintains that the assessors and the Tax Commission did not properly determine fair market value. It is Dow's position that the assessors erred in refusing to use actual age rather than effective age in determining depreciation. We note that as discussed earlier, the Commission agreed with Dow on this issue, and made the necessary corrections to compensate for this situation.
We are of the opinion that the evidence presented substantiates the Commission's factual finding that in this case design capacity does not equal maximum flow under optimum conditions. The Commission reached the determination that design capacity in this case equalled 80% of the maximum rate of flow based upon the testimony that Dow does not expect to operate its pipelines in excess of that percentage due to normal maintenance and down time. In conclusion, we note that the guidelines used by the assessors reflect a value as of January 1, 1979, rather than the January 1, 1980, value required by LSA R.S. 47:2331. As was the case with the assessment of Dow's machinery and equipment, the assessments rendered on the pipelines did not exceed the value which would have been reached had the tables been properly updated to 1980 = 100%. Additionally, there is no question that all similarly treated taxpayers were treated alike.

ASSIGNMENT IV
Finally, Dow alleges that the trial court erred in failing to rule on the unconstitutional discrimination against ad valorem taxpayers with regard to the interest to be paid on taxes paid under protest for which suits for refund have been filed. We note that the statute referred to, LSA R.S. 47:2110, provides in pertinent part, "If the taxpayer prevails, the officer shall refund the amount to the taxpayer with interest at the rate of two per centum per annum for the period from the date such funds were received by the officer to the date of such refund." (emphasis added). Because Dow has not prevailed in its suit for refund, we are of the opinion that this issue is best left for a case where the matter is more properly before this court.
Therefore, for the foregoing reasons, the judgment of the trial court is hereby affirmed. Costs are taxed to appellant, Dow Chemical Company.
AFFIRMED.
NOTES
[1] See Dow Chemical Co. v. Pitre, 421 So.2d 847 (La.1982), wherein the Louisiana Supreme Court determined that Iberville Parish was the proper venue for these consolidated multi-parish pipeline cases.
[2] Dow has been able through good management and maintenance practices, to operate certain portions or plants at or above their rated capacities. According to the definitions set forth in the appraisal report for functional obsolescence, a plant is granted some consideration for functional inutility, that is inability to feasibly achieve design or rated capacity, but no positive consideration was given for plants or processes operating above capacity.