MOORE, J.
|tANR Pipeline Co., Tennessee Gas Pipeline Co. and Southern Natural Gas Co. (collectively referred to as “the taxpayers”) appeal three judgments that reversed and vacated a ruling of the Louisiana Tax Commission (“the LTC”) and reinstated the tax assessments fixed by the assessors of Ouachita, Union and Lincoln Parishes on the taxpayers’ property in those parishes. For the reasons expressed, we affirm.

Factual Background

The taxpayers are corporate affiliates that provide natural gas transportation, storage and balancing services in Louisiana and in interstate commerce. Their property is classified as “public service property” under La. R.S. 47:1851 and thus subject to assessment at 25% of fair market value under La. Const. Art. VII, § 18. (By contrast, intrastate pipelines are deemed “non-public service property” and assessed at only 15% of fair market value.) For property tax purposes, public service property is normally assessed on a system-wide basis by the LTC, which then allocates valuations to the individual parishes. La. Const. Art. VII, § 18(D), La. R.S. 47:1855 A. The taxpayers’ property is also regulated by the Federal Energy Regulatory Commission (“FERC”), 15 U.S.C. § 717f(b), and thus subject to an extensive regulatory process before any of it can be sold. According to the taxpayers, FERC regulation depresses the fair market value of their property.
In the 1990s, ANR filed suits alleging that the LTC was treating other, competing pipelines (called “preferred pipelines”) as though they were not public service property, i. e., assessing their property at only 15% 12and applying depreciation. Tennessee Gas Pipeline and Southern Natural Gas joined the suits for the years 2000-2003, the time frame at issue in this appeal.
After a trial in 2005, Judge Tim Kelley of the 19th Judicial District Court found that the LTC violated the taxpayers’ rights to uniform taxation; however, he rejected their claim for refunds. Instead, he ordered that the taxpayers’ property be reassessed by parish assessors at 15% of fair market value, using the same method as for the preferred companies. In effect, local assessors were ordered, for the first time, to assess public service property, but to do so equitably with non-public service property.
*1084 The taxpayers appealed, claiming they were entitled to a refund, not a reassessment, but the First Circuit affirmed, and both the Louisiana and United States Supreme Courts denied writs. ANR Pipeline Co. v. Louisiana Tax Comm’n, 2005-1142 (La.App. 1 Cir. 9/7/05), 923 So.2d 81, writ denied, 2005-2372 (La.3/17/06), 925 So.2d 547, cert. denied, 549 U.S. 822, 127 S.Ct. 157, 166 L.Ed.2d 38 (2006) (“ANR VI”).
When this judgment became final, the LTC formally ordered assessors to reassess the taxpayers’ property using the same valuation methodology as for other pipelines and at 15% of fair market value.
On May 17, 2006, the taxpayers filed their reassessment returns with the assessors of Ouachita, Union and Lincoln Parishes. They reported the depreciated replacement cost of their property and requested a reduction in value for obsolescence. The obsolescence was based on the claim that the pipelines were operating at less than full capacity. However, according to Rthe assessors, the supporting documents (attachment to LAT 4, 5 and 14) listed only “percentage of pipeline capacity used” for each year, based on a nationwide average of the entire pipeline system and without stating the throughput and rated capacity of the lines in the respective parishes.
On August 28, 2006, the taxpayers filed letter memoranda in support of their requests for obsolescence. In support they attached the affidavits of Sally Costley, their tax agent, listing the pipelines’ capacity used in 2002-2003; of Thomas K. Te-garden, an expert in utilities appraisal, listing the fair market value of the property for the same period; and of Richard Smead, an expert in FERC rate proceedings, stating that the effect of regulation was to depress the value of the property.
According to the assessors, however, the percentages were still based on nationwide capacity used, not the capacity used in the individual parishes. Moreover, the percentages were inconsistent. For example, ANR first reported a use of 62.54% of capacity in Ouachita Parish in 2003, but in the amended request, this dropped to 60.69%; Southern Natural Gas first reported a use of 80.451% of capacity in Lincoln Parish in 2000, but this dropped to 60.591% in the amended request. Ouachi-ta Parish Deputy Assessor Joellen Johnson testified before the LTC that she specifically requested additional information from the taxpayers, but received none. Finding that the reported capacities were unreliable and lacking in factual support, the assessors rejected the claims for obsolescence and assessed the property at the values stated on the face of the returns.
| ,,The new assessed values in Ouachita, Union and Lincoln Parishes were 2-2½ times higher than those originally entered by the LTC; in Ouachita Parish, for example, the difference amounted to over $1 million in extra tax due from ANR, and completely negated the taxpayers’ claims for refunds arising from ANR VI. The taxpayers initially lodged protests with the parish boards of review, which denied them all. They then appealed the reassessments to the LTC.
After a hearing in October 2009, the LTC ruled that the assessors had indeed used on the taxpayers’ property the “same valuation and assessment methodology” as on the preferred properties. It also found, however, that the assessors had failed to adjust the fair market value for obsolescence based on the “service factor for throughput,” resulting in incorrect valuation and an abuse of discretion. The LTC ordered the assessors to reduce the valuations in amounts ranging from 19-34%, based on Ms. Costley’s affidavit.
*1085 The taxpayers lodged an appeal in the 19th JDC but did not file for judicial review in Ouachita, Union or Lincoln Parish.

Procedural History

On November 23, 2009, the assessors of Ouachita, Union and Lincoln Parishes filed the instant petitions for judicial review pursuant to La. R.S. 47:1998 A and 1989 D. They alleged that they were aggrieved by the ruling of the LTC, and requested that its decision be vacated and their own reassessments reinstated. The taxpayers did not file their own petitions for judicial review in these parishes or reconvene against the assessors.
|sThe taxpayers did, however, file numerous exceptions: lis pendens, improper venue, lack of subject matter jurisdiction, no right of action, no cause of action, and prematurity (an exception of nonjoinder was later withdrawn). These argued, in essence, that any review of the LTC’s decision was proper only in the 19th JDC, where an appeal was currently pending. They also contended that the LTC never authorized the assessors to challenge its decision, and in fact the only appeal authorized by statute, R.S. 47:1856, is that of a taxpayer in the 19th JDC. At hearings in February 2010, the taxpayers argued that allowing multiple appeals was judicially inefficient and could lead to inconsistent results.
The district courts denied all exceptions. The taxpayers applied for writs, which this court consolidated and denied on June 17, 2010. Jones v. Southern Natural Gas Co., 45,677 (La.App. 2 Cir. 6/17/10) (unpublished writ denial). The Louisiana Supreme Court also denied writs and a stay. Jones v. Southern Natural Gas, 2010-1558 (La.7/15/10), 39 So.3d 593.
The cases proceeded to trials in July and August 2010. Although the trials were limited to argument, the taxpayers introduced into evidence complete transcripts and exhibits of all proceedings before the LTC, comprising some 29 binders, each about 3 inches thick.
All three courts found that the taxpayers failed to provide any specific, substantive evidence of obsolescence, only throughput figures, which the assessors were entitled to disregard as inadequate. The courts found that the LTC exceeded its authority in ordering the assessors to adopt such evidence, and vacated the LTC’s order. A final judgment to this effect | ¿was rendered in each case.
The taxpayers have appealed, designating 12 assignments of error.

Discussion: Rulings on Exceptions

By their first assignment of error, the taxpayers urge the courts erred in denying their declinatory exceptions of lis pendens, improper venue and lack of subject matter jurisdiction, and their peremptory exceptions of no cause of action, no right of action and prescription. This court notes at the outset that the taxpayers already challenged these rulings by writ application which was denied by this court on June 17, 2010, and by the supreme court on July 15, 2010. Jones v. Southern Natural Gas, supra. Ordinarily, this court does not reconsider matters after the denial of writ. URCA 2-18.7; D’Amico, Curet & Dampf v. Jumonville, 458 So.2d 903 (La.1984). Out of abundant caution, however, we will briefly revisit the exceptions.
The factual basis of the exceptions is that the taxpayers have properly appealed the LTC’s ruling in the 19th JDC, and that the instant petitions arise out of those pending proceedings. In support they cite La. R.S. 47:1856 D(l):
Any company that is dissatisfied with the final determination of assessed valuation by the Louisiana Tax Commission may institute suit appealing the correct *1086 ness or legality of such final determination of assessed valuation for taxation by the Louisiana Tax Commission. However, to state a cause of action, the petition instituting such suit shall name the Louisiana Tax Commission as defendant and shall set forth not only the final determination of assessed valuation for taxation made by the Louisiana Tax Commission appealed from, but also the assessed valuation for taxation that the company deems to be correct and legal and the reasons therefor.
|7The assessors, however, show that another statute, La. R.S. 47:1998 A(l)(a), specifically authorized the instant actions. It provides, in pertinent part and with emphasis added:
Any taxpayer or bona fide representative of an affected tax-recipient body in the state dissatisfied with the final determination of the Louisiana Tax Commission under the provisions of R.S. 47:1998 [review of appeals by the LTC] shall have the right to institute suit within thirty days of the entry of any final decision of the Louisiana Tax Commission in the district court for the parish where the Louisiana Tax Commission is domiciled or the district court of the parish where the property is located contesting the correctness of assessment.
The taxpayers responded, at oral argument, that the recent case of Gisclair v. Louisiana Tax Comm’n, 2009-0007 (La.6/26/09), 16 So.3d 1132, held that an assessor cannot sue under R.S. 47:1998. On review, however, we do not find that Gisclair ever mentions R.S. 47:1998. By a plain reading, R.S. 47:1998 A(l)(a) explicitly confers subject matter jurisdiction, a right of action, cause of action, and proper venue for the assessors to file the instant actions challenging the correctness of an assessment by the LTC. In yet another branch of this litigation, a federal district court recently cited R.S. 47:1998 and held, “State law gives the local assessors the express right to challenge rulings by the Tax Commission in their home parishes and the assessors are exercising those rights.” ANR Pipeline Co. v. Louisiana Tax Comm’n, 10-2622 (E.D.La.1/19/11), 2011 WL 163547, at *15. The district courts did not err in denying these exceptions.
“When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same | ¡¡capacities, the defendant may have all but the first suit dismissed” by filing an exception of lis pendens. La. C.C.P. art. 531. The test for granting an exception of lis pendens is whether a final judgment in the first suit would be res judicata in the second. Cox v. Boggs, 39,566 (La.App. 2 Cir. 4/6/05), 899 So.2d 770. The taxpayers concede that their first action, in the 19th JDC, was a challenge to the unconstitutional taxation of its public service property and to confect a remedy. Orig. brief, 11. The instant actions, however, challenged the LTC’s ruling that disallowed the method of valuation used by assessors in their respective parishes to value the public service property. Although the actions are closely related, they are not for the same transaction or occurrence. The district courts did not err in denying the exceptions of lis pendens.
As noted, La. R.S. 47:1998 A(l)(a) gives any dissatisfied party 30 days to file an action contesting a final decision of the LTC. The LTC’s ruling was rendered on November 23, 2009, and the instant petitions were filed in the district courts that same day. The assessors’ suits are obviously timely, and the district courts did not err in denying the exceptions of prescrip *1087 tion. This assignment of error lacks merit.

General Burden of Proof

By their second assignment of error, the taxpayers urge that the LTC and the district courts erred in placing the burden of proof of obsolescence on the taxpayers. In support, they cite La. R.S. 47:2824, which provides in pertinent part, with emphasis added:
Each assessor shall gather all data necessary to properly determine the fair market value of all property subject to | ^taxation within his respective parish or district. In securing this data, the assessor may employ the use of self-reporting forms by property owners.
The taxpayers argue that this statute imposes a mandatory duty on the assessor, and if the assessor feels the information submitted by the taxpayer is inadequate, the assessor is required to request additional supporting data. They also cite this court’s recent opinion in Bailey v. Ener-Vest Operating Co., 45,553 (La.App. 2 Cir. 6/30/10), 43 So.3d 1046, which held that “when an assessor changes a policy or procedure regarding the information to be provided by a taxpayer then the assessor should take steps to inform the taxpayer of what information is required[.]” The taxpayers argue that the instant situation is analogous to EnerVest and warrants a finding that the assessors failed in their burden of proof.
The assessors respond that EnerVest and many other cases actually place the burden of proving obsolescence on the party seeking to benefit from it, and that evidence virtually identical to that submitted here was found insufficient to prove obsolescence in Dow Chem. Co. v. Pitre, 468 So.2d 747 (La.App. 1 Cir.1985), and Crosstex LIG v. Bailey, 2006-1013 (La.App. 1 Cir. 9/15/06), 936 So.2d 886 (unreported), writ denied, 2006-2475 (La.12/15/06), 945 So.2d 691. They also contend that an assessment is presumptively correct until the taxpayer proves otherwise, thus placing the burden on the taxpayer. Gisclair v. Louisiana Tax Comm’n, supra.
This court stands by its statement of the burden of proof in EnerVest, supra: “Under the guidelines, the burden is on the party claiming obsolescence to give the assessor sufficient data to support the claim.” | i0Further, “We do not find that the burden is on the assessor to substantiate a claim for obsolescence, but we do find that when an assessor changes a policy or procedure regarding the information to be provided by a taxpayer then the assessor should take steps to inform the taxpayer of what information is required before completing the determination of fair market value and the assessment.” Id., at 17,19, 43 So.3d at 1056-1067.
In the instant cases, the assessors were not changing their policy or procedure regarding the quality or quantity of data needed to support a claim of obsolescence. On the contrary, they were assessing public service property for the first time, pursuant to court order in ANR VI, supra, and an LTC ruling, expressly using the same methodology as for non-public service property. There was no basis for shifting the burden of proof: the burden was, and remained, with the taxpayers. The LTC and the district courts did not err in imposing the burden of proof; this assignment lacks merit.

Standard of Review

The taxpayers further argue, without specifically designating it as error, that this court owes no deference to the findings of the district courts but must review the record de novo. This is correct; in reviewing an administrative adjudication, the district court functions as an *1088 appellate court. Once the district court renders a final judgment, an aggrieved party may seek review by appeal to the appropriate appellate court. On review of the district court’s judgment, the court of appeal owes no deference to the factual findings or legal conclusions of the district court. Smith v. State, 39,368 (La.App. 2 Cir. 3/2/05), 895 So.2d 735, writ denied, 2005-1103 (La.6/17/05), 904 So.2d 701, and citations therein; Bailey v. EnerVest, supra.
Under the Administrative Procedure Act, La. R.S. 49:964 G, the district court and court of appeal may reverse or modify the agency’s determination if the substantial rights of the party seeking review have been prejudiced because the administrative findings, inferences, conclusions or decisions are (1) in violation of constitutional or statutory provisions, (2) in excess of the agency’s statutory authority, (3) made upon unlawful procedure, (4) affected by other error of law, (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion, or (6) manifestly erroneous in view of the reliable, probative and substantial evidence in the record. Smith v. State, supra; Bailey v. EnerVest, supra.

Proof of Obsolescence

By them next five assignments of error, the taxpayers contest the substantive rulings of the district courts which overruled the LTC and rejected their claims for a deduction for obsolescence. Specifically, they contend that they did indeed overcome, by a preponderance of the evidence, the presumption that an assessor’s evaluation is correct; that the LTC and the courts erred in finding that the assessors had utilized the same methodology as used for non-public service pipelines in their parishes; that the LTC erred in adopting the assessors’ determinations of fair market value and applying a deduction for throughput/capacity utilization; that the trial courts erred in adopting the assessors’ determinations of fair market value; h2and that the LTC and the trial courts erred in failing to recognize additional obsolescence on the taxpayers’ property.
The heart of the argument is that both the LTC and the district courts failed to apply the critical concepts of fair market value, the basis of taxation under La. Const. Art. VII, § 18(B) and (D), defined in La. R.S. 47:2321 as “the price for property which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances[.]” They contend that appraisers use three nationally recognized approaches: the market, cost and income approaches. La. R.S. 47:2323 C. Further, in valuing their public service property, the LTC originally used the cost (historical cost less depreciation, or net book value) and income (capitalized earnings) approaches, giving appropriate weight to each to fix a fair market value; the resulting process is called the unit approach. Still further, in the cost approach, the assessor is required to estimate the replacement or reproduction cost of the improvements, “deducting therefrom the estimated depreciation,” and then adding the market value of the land, if any. La. R.S. 47:2323 C(2). In addition, the LTC’s guidelines for valuation of pipelines formerly recognized economic obsolescence with a service factor based on the following formula:
Service Factor = (Actual Throughput/Rated Capacity)[1]
The taxpayers argue that the assessors failed to apply the service | ^factor; and *1089 that although the LTC applied it, the LTC then failed to give an additional deduction for the effect of FERC regulation, which causes economic obsolescence and otherwise diminishes the price that a willing and informed buyer would pay for heavily regulated property. Finally, they reiterate the list of fair market values and service factors stated in Ms. Costley’s affidavit, and Mr. Tegarden’s testimony before the LTC that this was substantial evidence of obsolescence.
The assessors respond that no court has ever held that the LTC Guidelines mandate a reduction of value for obsolescence; such a reduction is discretionary, based on the quality of the evidence submitted by the taxpayer. Dow Chem. Co. v. Pitre, supra; Crosstex LIG v. Bailey, supra; Bailey v. EnerVest Operating Co., supra. They characterize the information received from the taxpayers as “free-standing and wholly unsupported” numbers which purportedly represented the systemwide average of “percentage of pipeline capacity used” for each year. They reiterate that many of the capacity utilization figures inexplicably curiously diminished between the original returns and the August 28 affidavit, and thus could not be considered detailed supporting information. They submit that their assessments were legally grounded and factually based on the information submitted, that the LTC abused its discretion in overruling the assessments and ordering reductions based on Ms. Costley’s unsupported figures, and that the district courts were correct to vacate the LTC’s order.
The supreme court recently approved the assessors’ methodology in Transcontinental Gas Pipeline Corp. v. Louisiana Tax Comm’n, 2009-1988 114(La.3/16/10), 32 So.3d 199. Transcontinental was a constitutional challenge to Louisiana’s system of assessing intrastate pipelines at 15% and interstate pipelines at 25%, and did not involve the unique facts arising from ANR VI, a remand to local assessors to assess non-public service property for the first time. However, because ANR VI directed local assessors to utilize the same methodology previously applied to non-public service pipelines, Transcontinental’s discussion is germane and persuasive:
There is no evidence in the record showing that the interstate companies are paying more ad valorem tax than their unregulated intrastate competitors. To the contrary, there is some indication in the record that the cost approach, utilized by the parish assessors, regularly values property higher than property which has been valued on the unit method, depending on whether the value is adjusted for economic obsolescence. The record further reflects that parish assessors normally do not account for economic obsolescence absent extraordinary circumstances, as they are not required to consider that factor under § 1305(G) of the LTC guidelines. The indication is that while the local assessors are obligated to follow the guideline charts for different sizes and types of pipes, they are allowed great discretion in determining other factors such as obsolescence, and normally do not even take that factor into consideration ab *1090 sent an extraordinary showing. Economic obsolescence is important to the unitary method of appraisal of rate-regulated companies by the LTC, because rate-regulated entities are capped in the amount of earning capability they can derive from a particular piece of property. There is some expert testimony indicating that if all factors, including economic obsolescence, are taken into account for both methods of appraisal, the values from the two different methods, at best should approach each other. The overall implication from the record, however, is that, typically, the method currently used by the parish assessors to assess the fair market value of pipes within their parishes comes out higher than the method used by the LTC, such that the plaintiffs’ tax burden could likely increase if they were treated like their claimed favored competitors, the unregulated intrastate companies. When asked which method currently results in a higher tax burden, no expert could give a definite answer.
| KId., at 23-24, 32 So.3d at 213-214 (emphasis added, footnotes omitted).
Transcontinental plainly reaffirms the notion that parish assessors are not required to reduce for economic obsolescence “absent an extraordinary showing” and thus their methodology may result in a higher assessment than if the LTC applied its unit approach to the same property. The supreme court found no basis to reject the assessors’ approach; on this record, neither can we.
Without belaboring this enormous record, we find merit in the assessors’ position. The taxpayers did not give the assessors financial data or other evidence of economic loss, only a document listing the percentages of pipeline capacity used for each tax year. Testimony before the LTC revealed that the percentages were not specific to the individual parishes but based on a systemwide average. This appears to be the same quality and quantity of evidence that was found lacking in Cros-stex LIG, supra. As noted earlier, in one parish the taxpayer failed to respond to a specific request for additional, substantiating information. Unlike the situation in EnerVest, supra, the taxpayers did not introduce a third-party engineering report or long-term production levels. Taken as a whole, the evidence here does not rise to the level of an “extraordinary showing” that would obligate the assessors to exercise their discretion in applying a reduction for functional obsolescence.
For the same reasons, we find that the LTC’s decision to reverse the assessors and order reduced assessments was arbitrary, capricious, and not supported or sustainable by a preponderance of the evidence as reviewed by |1fithis court. La. R.S. 49:964 G; Bailey v. EnerVest, supra; Smith v. State, supra. The district courts did not err in reversing the LTC, and these assignments of error lack merit.

Constitutional Claims

By their five final assignments of error, the taxpayers urge that the LTC’s Guidelines, the assessors’ methodology, or both, violated the uniformity guarantee of La. Const. Art. VII, § 18(D), and the due process guarantee of the 14th Amendment and La. Const. Art. I, § 2.
Although Louisiana courts generally possess the power and authority to decide the constitutionality of challenged statutory provisions, a court is required to do so only “if the procedural posture of the case and the relief sought by the appellant demand that [it] do so.” Burmaster v. Plaquemines Parish Gov’t, 2007-2432 (La.5/21/08), 982 So.2d 795, and citations therein. Courts should refrain from reaching or deciding a constitutional *1091 issue unless such a determination is essential to the decision of the case or controversy. Id.
Although five errors are designated, the arguments are cursory at best and raise three arguments.
(1) Uniformity. By their 12th assignment of error, the taxpayers urge the actions of the LTC and the assessors in valuing the taxpayers’ property to determine refunds violated the uniformity requirements of the Louisiana Constitution and equal protection and due process clauses of the Louisiana and U.S. Constitutions. They contend that in the wake of ANR VI, “a number of parish assessors in the revaluation process granted plaintiffs | i7functional and economic obsolescence based on the same information the taxpayers submitted to the assessors,” resulting in unequal treatment and entitling the taxpayers to a reduction.
Notably, the First Circuit has already considered and rejected this claim in Cros-stex LIG v. Bailey, supra, on the basis that the grant of economic obsolescence depends on the quality and quantity of the evidence presented. “[Constitutional and statutory law requirements of uniformity in assessments do not mandate that every pipeline within a parish be assessed identically or that every parish render the same assessment as to a single pipeline.” Id., 15. Likewise, in the instant case we do not find that the denial of the taxpayers’ obsolescence claim was so unrelated to the quantity and quality of the evidence offered to support the claim as to amount to unequal treatment of the taxpayers.
(2) Due process—fair treatment by assessors. By their 10th assignment, the taxpayers urge the LTC Guidelines, §§ 1301, et seq., used by the assessors in valuing the taxpayers’ property to determine refunds, do not specify the information the taxpayers were to provide to the assessors to determine obsolescence in their properties and are thus so vague as to violate the taxpayers’ due process and equal protections rights. By their 11th assignment, they urge the assessors’ practice of disclosing information that they will consider in granting an allowance for obsolescence only after the tax rolls have closed violates the taxpayers’ rights of due process and equal protection.
|i8At the outset, we note that a federal district court has already dismissed the taxpayers’ constitutional challenges based on the commerce clause and due process. ANR Pipeline Co. v. Louisiana Tax Comm’n, 10-2622 (E.D.La.1/19/11), 2011 WL 163547. In support of the instant claim, the taxpayers cite La. R.S. 47:2323 (“each assessor shall gather all data necessary to properly determine fair market value of all property subject to taxation within his respective parish or district”) and the former 61 La. Adm. C. Pt. V, § 1303 B (“if information is not complete and the LAT-14 Form is not properly prepared, report will be returned for further compliance”) to argue that due process requires the assessors to advise them precisely what kind of information is needed to support an obsolescence claim.
However, the taxpayers have not shown any authority, and we are unaware of any, requiring the assessors to provide this level of information concerning a discretionary reduction. The burden is not on the assessor to substantiate a claim for obsolescence. Bailey v. EnerVest, supra. We perceive no constitutional violation.
(3) Due process—changes to Guidelines. By their eighth assignment, the taxpayers urge the LTC Guidelines, §§ 1301, et seq., for the years 1998 through 2003, are invalid and conflict with La. R.S. 47:2323 C, which requires that assessors recognize all depreciation under the cost *1092 approach, including all forms of obsolescence. By their ninth assignment, they urge that the use of the Guidelines violated them due process and equal protection rights because the taxpayers were not given notice that the Guidelines would apply to their property and hence no opportunity to participate in the | mLTC’s annual rule-making process.
As noted above, these portions of the Guidelines, 61 La. Adm. C. Pt. V, §§ 1301 A(2) and 1305 F and G, changed between 1999 and 2008. Did these changes amount to a denial of due process? As the supreme court noted in Transcontinental, supra, assessors have never been required to consider economic obsolescence under former § 1305 G. Moreover, the change of phraseology from shall to may in § 1305 does not abolish anyone’s right to obtain a reduction for economic obsolescence; it merely alters the burden of proof. A change in the burden of proof, without affecting the claimant’s substantive rights, is not a due process violation. Burmaster v. Plaquemines Parish Gov’t, supra; Sudwischer v. Estate of Hoffpauir, 97-0785 (La.12/12/97), 705 So.2d 724. Considering that reduction for economic obsolescence was never an absolute right, and that the amendments to the LTC Guidelines merely reallocated the burden of proving such a reduction, we find no violation of due process. These assignments of error lack merit.

Conclusion

For the reasons expressed, the judgments reversing and vacating the ruling of the Louisiana Tax Commission, and reinstating the assessments made by the assessors of Ouachita, Union and Lincoln Parishes, of the taxpayers’ property in those parishes, are affirmed. All costs are to be paid by the appellants, ANR Pipeline Co., Tennessee Gas Pipeline Co. and Southern Natural Gas Co.
AFFIRMED.

. Prior to 1999, the Guidelines were framed in mandatory terms, using "appropriate al *1089 lowance should be made,” "economic or functional obsolescence shall be given” and "Economic obsolescence should be recognized!.]” From 1999 through 2008, these references were rephrased as "economic and functional obsolescence may be given” and “Economic obsolescence may be recognized[.]” Effective March 2009, the Guidelines again state, "Functional and/or economic obsolescence shall be considered!,]” but the service factor formula has been deleted. 61 La. Adm. C. Pt. V, §§ 1301 A(2), 1305 F, G, as amended by La. Reg. 25:316 (February 1999) and 35:498 (March 2009).