WILLIAMS, J.
hln these consolidated cases, the defendants, Southern Natural Gas Company, Tennessee Gas Pipeline Company, and ANR Pipeline Company, appeal separate judgments in favor of the Assessors in East Carroll Parish, West Carroll Parish and Jackson Parish. The district courts reversed and vacated a ruling of the Louisiana Tax Commission. For the following reasons, we affirm.
FACTS
ANR Pipeline Company, Southern Natural Gas Company and Tennessee Gas Pipeline Company (“the taxpayers”) are natural gas pipeline companies that operate in Louisiana and in interstate commerce. Their property is classified as “public service property” under LSA-R.S. 47:1851 and subject to assessment at 25% of fair market value under La. Const. Art. VII, Section 18. In contrast, intrastate pipelines are deemed “non-public service property” and assessed at the lower rate of 15% of fair market value. For property tax purposes, public service property is assessed on a systemwide basis by the Louisiana Tax Commission (“LTC”), which then allocates valuations to the individual parishes. The taxpayers’ property is also regulated by the Federal Energy Regulatory Commission (“FERC”).
In the 1990s, ANR filed lawsuits alleging that the LTC had failed to assess the public service property of other, competing pipelines regulated by the Public Service Commission (“PSC pipelines”) at 25% of fair market value. Instead, the PSC pipelines’ property was assessed at 15% of fair market value by the parish assessors. Southern Natural Gas Company and Tennessee Gas Pipeline Company joined the ANR lawsuit for the years |22000-2003. After a trial in 2005, the 19th Judicial District Court (JDC) found that the LTC had violated the taxpayers’ right to uniform taxation by allowing the PSC pipelines to be locally assessed. However, the trial court rejected the taxpayers’ claims for refunds based on assessment at 15% of the LTC’s fair market valuation. Rather, the trial court remanded the matter to the LTC and ordered that the taxpayers’ property be reassessed by parish assessors at 15% of fair market value, using the same valuation method as was used for the PSC pipelines. The taxpayers appealed, claiming that they were entitled to a refund, not a reassessment, but the First Circuit affirmed the remedy ordered by the trial court. ANR Pipeline Co. v. Louisiana Tax Commission, 05-1142 (La.App.1st Cir.9/7/05), 923 So.2d 81, writ denied, 05-2372 (La.3/17/06), 925 So.2d 547 (“ANR VI ”). On remand, the LTC issued Order No. 03-22-06, ordering the parish assessors to reassess the taxpayers’ property at 15% of fair market value, using the same *440 valuation methodology as that used for non-public service property.
In June 2006, the taxpayers filed their reassessment returns with the assessors of East Carroll, West Carroll and Jackson Parishes. The taxpayers reported the depreciated replacement cost of their pipelines and requested a reduction in value for obsolescence, which was based on pipeline utilization rates, FERC regulation and competition. Finding a lack of factual support, the assessors denied the claims for obsolescence and assessed the property at the values stated by the taxpayers on the return forms. The resulting reassessed valuations were approximately two times higher than the LTC’s original valuations, negating the taxpayers’ claims for refunds. The | .¡taxpayers filed protests with the parish boards of review, which denied the protests. The taxpayers then appealed the reassessments to the LTC.
After a hearing in October 2009, the LTC ruled that the assessors had used the same valuation and assessment methodology as that used to assess the PSC pipelines. However, the LTC found that the taxpayers had met them burden of proving a reduction in value for obsolescence and that the assessors’ failure to adjust the fair market values for obsolescence in accord with the service factor for throughput resulted in an incorrect valuation and was an abuse of discretion. The LTC ordered the assessors to reduce the valuations based on the throughput figures provided in the affidavit of Sally Costley, the taxpayers’ employee.
Subsequently, the assessors of East Carroll, West Carroll and Jackson Parishes filed petitions for judicial review of the LTC ruling pursuant to LSA-R.S. 47:1998. In response, the taxpayers filed exceptions of improper venue, lis pendens, no cause of action, no right of action and lack of subject matter jurisdiction. The district courts denied all exceptions. Following trial, the three courts found that the taxpayers failed to provide sufficient evidence to support their claim of obsolescence and that the assessors acted within their discretion in denying the taxpayers’ claims. Accordingly, the courts found that the LTC had exceeded its authority in reducing the assessments of the parish assessors and rendered judgments reversing and vacating the LTC’s order. The taxpayers appeal the judgments.
DISCUSSION
In five assignments of error, the taxpayers contend the trial courts |4erred in denying the exceptions of no right of action, no cause of action, improper venue, lis pendens and lack of subject matter jurisdiction. The taxpayers argue that the assessors did not have a right of action to seek direct judicial review of the LTC’s ruling because LSA-R.S. 47:1998 does not apply to public service property.
The exception of no right of action requires a court to determine whether the plaintiff is a member of the class of persons to whom the law grants the cause of action asserted in the petition. Gisclair v. Louisiana Tax Commission, 2010-0563 (La.9/24/10), 44 So.3d 272 (“Gisclair II”). In considering an exception of no cause of action, the court’s inquiry is to determine whether the law provides a remedy to anyone if the facts alleged in the petition are accepted as true. The legal question is whether a cause of action exists. See Jackson v. State Dept. of Corrections, 2000-2882 (La.5/15/01), 785 So.2d 803.
The correctness of assessments by a parish assessor are subject to review first by the parish governing authority, then by the Louisiana Tax Commission and finally by the courts, in accordance with procedures established by law. La. Const. Art. *441 VII, Section 18(E). Regarding judicial review, LSA-R.S. 47:1998(A) provides that any taxpayer or bona fide representative of an affected tax-recipient body dissatisfied with the final determination of the LTC under LSA-R.S. 47:1989 (review of appeals by LTC) shall have the right to institute suit in the district court of the parish where the LTC is domiciled “or the district court of the parish where the property is located contesting the correctness of assessment.” The assessor | Kshall bring suit when necessary to protect the interest of the state and shall have the right of appeal. LSA-R.S. 47:1998(C).
Citing Gisclair II, the taxpayers argue in their brief that Section 1998 does not authorize a parish assessor to seek review of LTC decisions involving public service property. However, unlike the present case, Gisclair II did not involve a situation in which the parish assessors were ordered by a court to assess public service property. Thus, Gisclair II does not support the taxpayers’ argument that Section 1998 is not applicable in this case. In ANR VI, the First Circuit recognized that although the remedy of local assessment of the taxpayers’ public service property was not, consistent with state law, such a remedy was necessary for uniformity of assessment. Once the parish assessors completed their assessments of the taxpayers’ property, La. Const. Art. VII, Sec. 18(E) expressly provided that the correctness of those assessments was subject to review by the parish, the LTC and then the courts. This procedure was followed by the taxpayers in filing objections with the parish boards of review and appealing to the LTC. Pursuant to Section 1998, the parish assessors were authorized to seek judicial review of the LTC’s decision concerning those assessments in the district court of the parish where the property is located. As this court stated in Jones v. Southern Natural Gas Co., 46,347 (La.App.2d Cir.4/13/11), 63 So.3d 1080, Section 1998 confers subject matter jurisdiction, a right of action, a cause of action and proper venue for the assessors to file the actions challenging the LTC’s ruling in this case. Given the applicability of Section 1998, the taxpayers’ argument that the district courts lack | (jurisdiction to release taxes paid under protest is not relevant. In ANR VI, the court noted that the LTC was responsible to issue any refunds through modification of the tax roles. Additionally, the taxpayers’ argument based on a potential Commerce Clause claim lacks merit in light of the supreme court’s decision in Transcontinental Gas Pipeline Corp. v. Louisiana Tax Commission, 09-1988 (La.3/16/10), 32 So.3d 199, concluding that the Louisiana ad valorem tax scheme is not unconstitutional under the Commerce Clause of the U.S. Constitution. The district courts did not err in denying those exceptions.
When two or more suits are pending in Louisiana courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by filing an exception of lis pen-dens. LSA-C.C.P. art. 531. Here, the taxpayers’ first suit and the actions by the assessors are not from the same transaction and are not between the same parties. The district courts did not err in denying the exception of lis pendens. The assignments of error lack merit.

Burden of Proof

The taxpayers contend the LTC and the district courts erred in placing the burden of proving obsolescence on the taxpayers. The taxpayers argue that the assessors have a mandatory duty to gather all data necessary to determine fair market value under LSA-R.S. 47:2324 and that the as *442 sessor is required to request additional supporting data.
Each assessor shall gather all data necessary to properly determine the fair market value of property subject to taxation within his respective parish. 17In securing this data, the assessor may employ the use of self-reporting forms by property owners. LSA-R.S. 47:2324. When an officer charged with that duty has completed an assessment for the taxation of property which is subject to taxation within his jurisdiction, there results an assessment which is presumed to be valid unless and until the taxpayer proves otherwise. Gisclair v. Louisiana Tax Commission, 09-0007 (La.6/26/09), 16 So.3d 1132. The LTC guidelines set forth in the Louisiana Administrative Code (L.A.C.) state that functional or economic obsolescence shall be considered in the analysis of fair market value as substantiated by the taxpayer in writing. L.A.C. 61:I.1301(A).
In them brief, the taxpayers argue that the assessors’ valuations are not entitled to the presumption of correctness because the court-ordered assessments were solely for the purpose of computing refunds, not calculating taxes. The parish assessors were charged by the courts and the LTC to assess the taxpayers’ property located within their parishes and the resulting assessments are presumed to be correct absent evidence to the contrary. Thus, the record does not support the taxpayers’ argument.
Citing Bailey v. EnerVest Operating Co., 45,553 (La.App.2d Cir.6/30/10), 43 So.3d 1046, the taxpayers argue that just as an assessor has a mandatory duty to gather data to determine fair market value and to inform the taxpayer about the information required after a change in policy, the assessors should also have been required to inform the taxpayers about the applicable policies concerning obsolescence the first time they submitted their tax forms. However, neither EnerVest, supra, nor any other case cited |sby the taxpayers imposes such a duty on the assessors. Rather, the LTC guidelines require the taxpayers to substantiate in writing the evidence of obsolescence. This argument lacks merit.
 Contrary to the taxpayers’ assertion in them brief, this court in Jones did not ignore Section 2324 or the EnerVest decision in considering the issue of the burden of proof. In concluding that the taxpayers have the burden of proving obsolescence, we adopt the prior discussion of this issue in Jones, supra, in pertinent part:
This court stands by its statement of the burden of proof in EnerVest, supra: “Under the guidelines, the burden is on the party claiming obsolescence to give the assessor sufficient data to support the claim.” Further, “We do not find that the burden is on the assessor to substantiate a claim for obsolescence, but we do find that when an assessor changes a policy or procedure regarding the information to be provided by a taxpayer then the assessor should take steps to inform the taxpayer of what information is required before completing the determination of fair market value and the assessment.” Id., at 17, 19, 43 So.3d at 1056-1067.
In the instant cases, the assessors were not changing their policy or procedure regarding the quality or quantity of data needed to support a claim of obsolescence. On the contrary, they were assessing public service property for the first time, pursuant to court order in ANR VI, supra, and an LTC ruling, expressly using the same methodology as for non-public service property. There was no basis for shifting the burden of proof: the burden was, and re *443 mained, with the taxpayers. The LTC and the district courts did not err in imposing the burden of proof; this assignment lacks merit.

Standard of Review

In reviewing an administrative adjudication, the district court functions as an appellate court. Once the district court renders a final judgment, an aggrieved party may seek review by appeal to the appropriate appellate court. On review of the district court’s judgment, the court of | ^appeal owes no deference to the factual findings or legal conclusions of the district court. Smith v. State Dept. of Health and Hospitals, 39,368 (La.App.2 Cir.3/2/05), 895 So.2d 735, writ denied, 2005-1103 (La.6/17/05), 904 So.2d 701, and citations therein; Bailey v. EnerVest, supra.
Under the Administrative Procedure Act, LSA-R.S. 49:964(G), the district court and court of appeal may reverse or modify the agency’s determination if the substantial rights of the party seeking review have been prejudiced because the administrative findings, inferences, conclusions or decisions are (1) in violation of constitutional or statutory provisions, (2) in excess of the agency’s statutory authority, (3) made upon unlawful procedure, (4) affected by other error of law, (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion, or (6) manifestly erroneous in view of the reliable, probative and substantial evidence in the record. Smith v. State, supra; Bailey v. EnerVest, supra. Obsolescence
Initially, we note that the taxpayers assert the same assignments of error contesting the substantive rulings of the district courts, which overruled the LTC and rejected their claims of a deduction for obsolescence, as those asserted in Jones, supra. Specifically, the taxpayers contend the LTC and the courts erred in finding that the assessors had utilized the same methodology as used for non-public service pipelines in their parishes; that the LTC erred in adopting the assessors’ determinations of fair market value and applying a deduction for throughput/capacity utilization; that the trial | incourts erred in adopting the assessors’ determinations of fair market value; and that the LTC and the trial courts erred in failing to recognize additional obsolescence on the taxpayers’ property.
The LTC guidelines provide that for assessment purposes, pipelines are to be valued at cost less physical deterioration. This “cost-new” is to be reduced for the appropriate allowance for physical deterioration based on the age of the pipeline, by multiplying replacement cost by the appropriate percent good factor. L.A.C. 61:1.1301(A)(2); Crosstex LIG, LLC v. Bailey, 06-1013 (La.App. 1st Cir.9/15/06), 936 So.2d 886 (unreported), writ denied, 06-2475 (La.12/15/06), 945 So.2d 691. Assessment will be based on fair market value listed on LAT Form 14, unless the taxpayer provides evidence of conditions that warrant change. Economic obsolescence is a loss in value of personal property above and beyond physical deterioration. L.A.C. 61:I.1305(F). Economic obsolescence may be recognized with a service factor that represents the remaining utility of the pipeline. The service factor is calculated using a formula stated as Service Factor = (Actual Throughput/Rated Capacity). L.A.C. 61:1.1305(0; EnerVest, supra.
The taxpayers contend the assessors failed to properly consider the effect of FERC regulation on the value of the taxpayers’ property. The taxpayers assert that the testimony of Richard Smead and Tom Tegarden that FERC regulation has a significant impact on value constituted *444 substantial evidence of economic obsolescence. However, the testimony of Smead and Tegarden was not specific to the property located in the parishes involved in this case. In addition, there was other testimony that 11, substantially all of the taxpayers’ pipeline capacity was subscribed under contracts by which they received monthly payments from customers based on the capacity reserved under the contract, rather than the amount of gas actually transported. Thus, this argument lacks merit.
In reviewing the record of these consolidated cases, we note that the evidence submitted to the assessors by the taxpayers in seeking a reduction of value for obsolescence is essentially the same as the evidence considered in Jones, supra. This evidence included the taxpayers’ original LAT forms with attachment and the August 2006 letter with the attached affidavits of Sally Costley, their tax agent, listing the pipelines’ capacity used in 2000-2003; of Thomas K. Tegarden, an expert in utilities appraisal, listing the fair market value of the property for the same period; and of Richard Smead, an expert in FERC rate proceedings, stating that the effect of regulation was to depress the value of the property.
Given the similarity of the evidence presented and of the taxpayers’ arguments on appeal, and based on our review of this record, we conclude that this court’s analysis of the issue regarding proof of obsolescence stated in Jones, supra is equally applicable to the present matter. Consequently, we adopt the relevant discussion from Jones, supra, in pertinent part:
The heart of the [taxpayers’] argument is that both the LTC and the district courts failed to apply the critical concepts of fair market value, the basis of taxation under La. Const. Art. VII, § 18(B) and (D), defined in La. R.S. 47:2821 as “the price for property which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances[.]” They contend that appraisers use three nationally recognized approaches: the market, cost and income approaches. La. R.S. 47:2828 C. Further, in valuing their public service property, the LTC 112originaIly used the cost (historical cost less depreciation, or net book value) and income (capitalized earnings) approaches, giving appropriate weight to each to fix a fair market value; the resulting process is called the unit approach ....
The taxpayers argue that the assessors failed to apply the service factor [of the LTC guidelines]; and that although the LTC applied it, the LTC then failed to give an additional deduction for the effect of FERC regulation, which causes economic obsolescence and otherwise diminishes the price that a willing and informed buyer would pay for heavily regulated property. Finally, they reiterate the list of fair market values and service factors stated in Ms. Costle/s affidavit, and Mr. Tegarden’s testimony before the LTC that this was substantial evidence of obsolescence.
The assessors respond that no court has ever held that the LTC Guidelines mandate a reduction of value for obsolescence; such a reduction is discretionary, based on the quality of the evidence submitted by the taxpayer. Dow Chem. Co. v. Pitre, [468 So.2d 747 (La.App. 1st Cir.1985) ]; Crosstex LIG v. Bailey, supra; Bailey v. EnerVest Operating Co., supra. They characterize the information received from the taxpayers as “free-standing and wholly unsupported” numbers which purportedly represented the systemwide average of “percentage of pipeline capacity used” for each year. *445 They reiterate that many of the capacity utilization figures inexplicably [and] curiously diminished between the original returns and the August 28 affidavit, and thus could not be considered detailed supporting information. They submit that their assessments were legally grounded and factually based on the information submitted, that the LTC abused its discretion in overruling the assessments and ordering reductions based on Ms. Costley’s unsupported figures, and that the district courts were correct to vacate the LTC’s order.
The supreme court recently approved the assessors’ methodology in Transcontinental Gas Pipeline Corp., [supra]. Transcontinental was a constitutional challenge to Louisiana’s system of assessing intrastate pipelines at 15% and interstate pipelines at 25%, and did not involve the unique facts arising from ANR VI, a remand to local assessors to assess [public] service property for the first time. However, because ANR VI directed local assessors to utilize the same methodology previously applied to non-public service pipelines, Transcontinental’s discussion is germane and persuasive:
There is no evidence in the record showing that the interstate companies are paying more ad valorem tax than their unregulated intrastate competitors. To the contrary, there is some indication in the record that the 11scost approach, utilized by the parish assessors, regularly values property higher than property which has been valued on the unit method, depending on whether the value is adjusted for economic obsolescence. The record further reflects that parish assessors normally do not account for economic obsolescence absent extraordinary circumstances, as they are not required to consider that factor under § 1305(G) of the LTC guidelines. The indication is that while the local assessors are obligated to follow the guideline charts for different sizes and types of pipes, they are allowed great discretion in determining other factors such as obsolescence, and normally do not even take that factor into consideration absent an extraordinary showing. Economic obsolescence is important to the unitary method of appraisal of rate-regulated companies by the LTC, because rate-regulated entities are capped in the amount of earning capability they can derive from a particular piece of property. There is some expert testimony indicating that if all factors, including economic obsolescence, .are taken into account for both methods of appraisal, the values from the two different methods, at best should approach each other. The overall implication from the record, however, is that, typically, the method currently used by the parish assessors to assess the fair market value of pipes within their parishes comes out higher than the method used by the LTC, such that the plaintiffs’ tax burden could likely increase if they were treated like their claimed favored competitors, the unregulated intrastate companies. When asked which method currently results in a higher tax burden, no expert could give a definite answer.
Id., at 23-24, 32 So.3d at 213-214 (emphasis added, footnotes omitted).
Transcontinental plainly reaffirms the notion that parish assessors are not required to reduce for economic obsolescence “absent an extraordinary showing” and thus their methodology may result in a higher assessment than if the LTC applied its unit approach to the *446 same property. The supreme court found no basis to reject the assessors’ approach; on this record, neither can we.
Without belaboring this enormous record, we find merit in the assessors’ position. The taxpayers did not give the assessors financial data or other evidence of economic loss, only a document listing the percentages of pipeline capacity used for each tax year. Testimony before the LTC revealed that 114the percentages were not specific to the individual parishes but based on a systemwide average. This appears to be the same quality and quantity of evidence that was found lacking in Crosstex LIG, supra. ... Unlike the situation in EnerVest, supra, the taxpayers did not introduce a third-party engineering report or long-term production levels. Taken as a whole, the evidence here does not rise to the level of an “extraordinary showing” that would obligate the assessors to exercise their discretion in applying a reduction for functional [or economic] obsolescence.
For the same reasons, we find that the LTC’s decision to reverse the assessors and order reduced assessments was arbitrary, capricious, and not supported or sustainable by a preponderance of the evidence as reviewed by this court. La. R.S. 49:964 G; Bailey v. EnerVest, supra; Smith v. State, supra. The district courts did not err in reversing the LTC, and these assignments of error lack merit.

Constitutional Claims

The taxpayers’ final assignments urge that the LTC guidelines, the assessors’ methodology, or both, violated the uniformity guarantee of La. Const. Art. VII, § 18(D), and the due process guarantee of the 14th Amendment and La. Const. Art. I, § 2. The taxpayers’ arguments in effect raise three issues.
(1) Uniformity. The taxpayers contend the actions of the LTC and the assessors in valuing the taxpayers’ property to determine refunds violated the uniformity requirements of the Louisiana Constitution and equal protection and due process clauses of the Louisiana and U.S. Constitutions. They argue that in the wake of ANR VI, “a number of parish assessors in the revaluation process granted plaintiffs functional and economic obsolescence based on the same information the taxpayers submitted to the assessor,” resulting in unequal treatment and entitling the taxpayers to a reduction.
As stated in Jones, supra, the First Circuit has already considered and 115rejected this claim in Crosstex LIG v. Bailey, supra, on the basis that the grant of economic obsolescence depends on the quality and quantity of the evidence presented. “[Constitutional and statutory law requirements of uniformity in assessment do not mandate that every pipeline within a parish be assessed identically or that every parish render the same assessment as to a single pipeline.” Id., at 15, 63 So.3d 1080. Likewise, in the instant case we do not find that the denial of the taxpayers’ obsolescence claim was so unrelated to the quantity and quality of the evidence offered to support the claim as to amount to unequal treatment of the taxpayers.
(2) Due process — fair treatment by assessors. The taxpayers urge that the LTC Guidelines, §§ 1301, et seq., used by the assessors in valuing the taxpayers’ property to determine refunds, do not specify the information the taxpayers were to provide to the assessors to determine obsolescence in their properties and are thus so vague as to violate the taxpayers’ due process and equal protection rights. *447 They also urge that the assessors’ practice of disclosing information that they will consider in granting an allowance for obsolescence only after the tax rolls have closed violates the taxpayers’ rights of due process and equal protection.
As we noted in Jones, supra, a federal district court has already dismissed the taxpayers’ constitutional challenges of the revaluation process based on the commerce clause, equal protection and due process. See ANR Pipeline Co. v. Louisiana Tax Comm’n, 10-2622, 2011 WL 163547 (E.D.La.1/19/11). The U.S. Fifth Circuit recently affirmed the dismissal of their claims. See ANR Pipeline Co. v. Louisiana Tax Comm’n, 646 F.3d 940 (5th Cir.2011). Here, the | t (¡taxpayers assert that due process requires the assessors to advise them precisely what kind of information is needed to support an obsolescence claim. However, the taxpayers have not shown any authority, and we are unaware of any, requiring the assessors to provide this level of information concerning a discretionary reduction. The burden is not on the assessor to substantiate a claim for obsolescence. Bailey v. Ener-Vest, supra. We perceive no constitutional violation.
(3) Due process — changes to Guidelines. The taxpayers contend the LTC Guidelines, §§ 1301, et seq., for the years 1998 through 2003, are invalid and conflict with LSA-R.S. 47:2323. They argue that the use of the LTC Guidelines violated their due process and equal protection rights because the taxpayers were not given notice that the Guidelines would apply to their property. The record shows that portions of the LTC guidelines changed between 1999 and 2008. As stated in Jones, supra, the change of phraseology from shall to may in § 1305 does not abolish anyone’s right to obtain a reduction for economic obsolescence, but merely alters the burden of proof. A change in the burden of proof, without affecting the claimant’s substantive rights, is not a due process violation. Burmaster v. Plaquemines Parish Gov’t, 07-2432 (La.5/21/08), 982 So.2d 795; Sudwischer v. Estate of Hoffpauir, 97-0785 (La.12/12/97), 705 So.2d 724. Considering that reduction for economic obsolescence was never an absolute right, and that the amendments to the LTC guidelines merely revised the burden of proving such a reduction, we find no violation of due process.
In addition, the court and LTC orders that required the parish |17assessors to assess the taxpayers’ property using the same valuation methodology as that used for non-public service properties were sufficient notice to the taxpayers that the LTC guidelines would be applied to their property. These assignments of error lack merit.
CONCLUSION
For the foregoing reasons, the judgments reversing and vacating the ruling of the Louisiana Tax Commission, and reinstating the assessments of the taxpayers’ property by the assessors of East Carroll, West Carroll and Jackson Parishes, are affirmed. Costs of this appeal are assessed to the appellants, Southern Natural Gas Company, Tennessee Gas Pipeline Company and ANR Pipeline Company.
AFFIRMED.