# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #012

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **13th day of March, 2018**, are as follows:

**BY HUGHES, J.**:

2017-C-0955
C/W
2017-C-0957

ERROL G. WILLIAMS, ASSESSOR, PARISH OF ORLEANS v. OPPORTUNITY HOMES LIMITED PARTNERSHIP AND LOUISIANA TAX COMMISSION (Parish of Orleans)

At issue in these consolidated cases is the correctness of administrative decisions issued by the Louisiana Tax Commission ("Commission") on review of the valuations, for the 2014 and 2015 tax years, by the Orleans Parish Tax Assessor ("Assessor") of a low-income housing development, owned by Opportunity Homes Limited Partnership ("Opportunity Homes"), for purposes of assessment of ad valorem taxes. The Commission ruled in favor of Opportunity Homes for both tax years. The administrative decisions were upheld by the district court but reversed by the appellate court. Accordingly, we reverse the appellate court rulings and reinstate the Louisiana Tax Commission decisions, modifying the Orleans Parish Assessor's assessments of the fair market value of the Opportunity Homes Limited Partnership property to $1,525,000 for both the 2014 and 2015 tax year.

APPELLATE COURT JUDGMENT REVERSED; TAX COMMISSION DECISIONS REINSTATED.

WEIMER, J., additionally concurs and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2017-C-0955

CONSOLIDATED WITH

No. 2017-C-0957

ERROL G. WILLIAMS, ASSESSOR, PARISH OF ORLEANS

VERSUS

OPPORTUNITY HOMES LIMITED PARTNERSHIP
AND LOUISIANA TAX COMMISSION

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS

**HUGHES, J.**

At issue in these consolidated cases is the correctness of administrative decisions issued by the Louisiana Tax Commission ("Commission") on review of the valuations, for the 2014 and 2015 tax years, by the Orleans Parish Tax Assessor ("Assessor") of a low-income housing development, owned by Opportunity Homes Limited Partnership ("Opportunity Homes"), for purposes of assessment of ad valorem taxes. The Commission ruled in favor of Opportunity Homes for both tax years. The administrative decisions were upheld by the district court but reversed by the appellate court. For the reasons that follow, we reverse the appellate court and reinstate the assessment values as determined by the Commission.

FACTS AND PROCEDURAL HISTORY

The factual and procedural history of this case was concisely set forth by the appellate court as follows:

Opportunity Homes describes itself as a "scattered-site, low income affordable housing development." It consists of thirty-two (32) single- and double-unit residential buildings. The separate properties are connected by way of a Tax Credit Regulatory Agreement ("TCRA"). Opportunity Homes notes the TCRA prohibits separation and sale of the various properties, and restricts the chargeable rents to "no more than sixty percent (60%) of the Area Median Income ("AMI")" for an extended period of time, but the rates are even lower for some buildings.

Pursuant to the powers and authority delegated to him by La. R.S. 47:1903, La. R.S. 47:1957, and La. R.S. 47:2323, Assessor Williams determined the fair market value ("FMV") of Opportunity Homes' scattered-site properties using what is known as the "market approach." In using this particular approach, Assessor Williams determined the FMV of Opportunity Homes' properties to be $4,200,900 and $4,083,610 for tax years 2014 and 2015, respectively.[1]

Pursuant to its authority under La. Const. Art. VII, § 18, the Commission reviewed the "correctness" of Assessor Williams' assessment. At a January 13, 2015 hearing, counsel for Opportunity Homes noted that in 2013, the same properties were valued at $1,525,000, and assessed accordingly. The Commission relied on assessments by Randy Harrington, its own staff appraiser, who used what is known as the "income approach" and reached FMVs of $1,525,000 for both tax years 2014 and 2015, which assessments specifically excluded the value of "Low Income Housing Tax Credits" ("LIHTCs") received by the taxpayer for encumbering the properties with below-market-value rents. Counsel for Opportunity Homes noted that pursuant to adopted and promulgated regulations, the income approach is the "recommended" approach for determining the FMV of "affordable rental housing." Based on the foregoing, the Commission moved to accept the staff recommendations as to each tax year.

As a result of the Commission's actions, on September 2, 2015, Assessor Williams commenced suit in the district court pursuant to La. R.S. 47:1998, La. R.S. 47:1989 and La. R.S. 49:964. The district court affirmed the Commission's decision, finding that the Commission's decision "was not in violation of any constitutional or statutory provisions, was not in excess of its statutory authority, was not made upon unlawful procedure, or affected by other error of law, was not arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." The district court further noted the decision "was clearly supported by the testimony and preponderance of the evidence before it, where [the Commission] had the opportunity to judge the credibility of witnesses by first-hand observation."

**Williams v. Opportunity Homes Limited Partnership**, 16-1185, pp. 1-3 (La. App.

---

[1] Thereafter, Opportunity Homes first requested review, as to the fair market values determined by the Assessor, before the Orleans Parish Board of Review, which reduced the valuation of the subject property to $1,525,000 for the 2014 tax year and maintained the Assessor's $4,083,600 valuation for the 2015 tax year. The Assessor appealed the Board of Review ruling on the 2014 tax year valuation ($1,525,000) to the Commission, and Opportunity Homes appealed the Board of Review ruling on the 2015 tax year valuation ($4,083,600) to the Commission.

4 Cir. 5/10/17), 220 So.3d 188, 189-90. Upon review, the appellate court ruled that the Commission's decisions were "in violation of statutory provisions, in excess of its authority, . . . based upon unlawful procedures," and "legally incorrect." **Id.**, 16-1185 at p. 4, 220 So.3d at 191. Accordingly, the appellate court reversed and reinstated the Assessor's fair market values for the 2014 and 2015 tax years. **Id.**

Both Opportunity Homes and the Commission sought review in this court, and we granted the writ applications. **Williams v. Opportunity Homes Limited Partnership**, 17-0955, 17-0957 (La. 10/27/17), 228 So.3d 1228, 228 So.3d 1231.

Opportunity Homes urges this court to reverse, contending the appellate court decision: is in conflict with other jurisprudence, harms the administrative authority of the Commission; negatively impacts statewide uniformity for ad valorem property assessment and taxation; misinterprets jurisprudence and law (including the Louisiana Administrative Procedure Act ("APA"), La. R.S. 49:950 et seq., relative to review of administrative agency decisions); and, alternatively, should have remanded the matter to the Commission to determine whether the market/sales comparison approach could have been applied to value the subject property so as to ensure statewide uniformity. The Commission additionally asserts that the appellate court erred in reversing the decisions of the Commission and the district court since there was "no evidence to reinstate prior assessed values of the Orleans Parish Assessor."

## LAW AND ANALYSIS

The essence of the dispute between the Assessor and Opportunity Homes is whether the method of valuing Opportunity Homes' low-income housing development for purposes of ad valorem taxation should be via the "market approach," as asserted by the Assessor, or via the "income approach," as asserted by Opportunity Homes.

As stated in La. Const. Art. VII, § 18(A), "[p]roperty subject to ad valorem

3

taxation shall be listed on the assessment rolls at its assessed valuation, which . . . shall be a percentage of its fair market value. The percentage of fair market value shall be uniform throughout the state upon the same class of property."[2]  Each assessor is authorized by La. Const. Art. VII, § 18(D), to "determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission or its successor."

The fair market value shall be determined in accordance with criteria established by law, which must be uniformly applied throughout the state.  La. Const. Art. VII, § 18(D); La. R.S. 47:2323(A).  Fair market value is defined by La. R.S. 47:2321 as "the price for property which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances; it shall be the highest price estimated in terms of money which property will bring if exposed for sale on the open market with reasonable time allowed to find a purchaser who is buying with knowledge of all the uses and purposes to which the property is best adapted and for which it can be legally used."

In furtherance of maintaining the uniformity required by La. Const. Art. VII, § 18(D), La. R.S. 47:2323(A) provides that "[u]niform guidelines, procedures and rules and regulations as are necessary to implement said criteria shall be adopted by the Louisiana Tax Commission only after public hearings held pursuant to the

---

[2] Paragraph B of La. Const. Art. VII, § 18, provides (in pertinent part):

The classifications of property subject to ad valorem taxation and the percentage of fair market value applicable to each classification for the purpose of determining assessed valuation are as follows:

| Classifications | | Percentages |
|---|---|---|
| 1. | Land | 10% |
| 2. | Improvements for residential purposes | 10% |
| 3. | Electric cooperative properties, excluding land | 15% |
| 4. | Public service properties, excluding land | 25% |
| 5. | Other property | 15% |

4

Administrative Procedure Act." Furthermore, each assessor is required by Section 2323(B) to "follow the uniform guidelines, procedures, and rules and regulations in determining the fair market value of all property subject to taxation within his respective parish or district," and "[a]ny manual or manuals used by an assessor shall be subject to approval by the Louisiana Tax Commission or its successor agency."

Three approaches for determining fair market value are set forth in Section 2323(C), as follows: "The fair market value of real and personal property shall be determined by the following generally recognized appraisal procedures: the market approach, the cost approach, and/or the income approach." In utilizing the market approach, an assessor is required to "use an appraisal technique in which the market value estimate is predicated upon prices paid in actual market transactions and current listings." La. R.S. 47:2323(C)(1). In utilizing the cost approach, an assessor is required to "use a method in which the value of a property is derived by estimating the replacement or reproduction cost of the improvements; deducting therefrom the estimated depreciation; and then adding the market value of the land, if any." La. R.S. 47:2323(C)(2). In utilizing the income approach, an assessor is required to "use an appraisal technique in which the anticipated net income is capitalized to indicate the capital amount of the investment which produces the net income." La. R.S. 47:2323(C)(3).

Revised Statute 47:1837(D) requires: "In order to promote compliance with the requirements of the constitution and laws of the state, the tax commission shall issue and, from time to time, may amend or revise rules and regulations containing minimum standards of assessment and appraisal performance . . . ."[3] In compliance

---

[3] The responsibility of the Commission as the supervisory state agency over parish tax assessors is clear. See also La. R.S. 47:1957(A) ("All taxable property in the state, except public service properties, shall be assessed by the several assessors. The assessors shall be responsible, *under the supervision of the tax commission*, for listing and assessing all property within their respective parishes, except such property as is subject to direct assessment by the tax commission . . . .") (emphasis added); La. R.S. 47:1990 ("The tax commission may change or correct any and all assessments of property for the purpose of taxation, in order to make the assessments conform to

5

with that responsibility, the Commission issued the following recommendation in 2009, in La. Admin. Code, Title 61, Part V, § 303(C), which provides:

> In assessing affordable rental housing, the *income approach* is recommended. As defined in this Section, affordable rental housing means residential housing consisting of one or more rental units, the construction and/or rental of which is subject to Section 42 of the Internal Revenue Code (26 USC 42), the Home Investment Partnership Program under the Cranston-Gonzalez National Affordable Housing Act (42 USC 12741 et seq.), the Federal Home Loan Banks Affordable Housing Program established pursuant to the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA) of 1989 (Public Law 101-73), or any other federal, state or similar program intended to provide affordable housing to persons of low or moderate income and the occupancy and maximum rental rates of such housing are restricted based on the income of the persons occupying such housing.

(Emphasis added.)

Notwithstanding the recommendation of La. Admin. Code, Title 61, Part V, § 303(C), that the income approach be employed by assessors in the valuation of affordable rental housing developments, the Assessor employed the market approach in his valuation of the Opportunity Homes property for the 2014 and 2015 tax years.

Paragraph (E) of La. Const. Art. VII, § 18, states that "[t]he correctness of assessments by the assessor shall be subject to review first by the parish governing authority, then by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance with procedures established by law." See also **ANR Pipeline Company v. Louisiana Tax Commission**, 02-1479, p. 5 (La. 7/2/03), 851 So.2d 1145, 1149 ("[C]orrectness challenges are subject to review under La. Const. Art. 7, § 18(E) by the parish governing authority and the [Commission] before being reviewed by Louisiana courts . . . .") (footnote omitted).

"Judicial review of decisions of the [Commission] is authorized by La. R.S. 47:1998(A)(1); the extent of that review is governed by La. R.S. 49:964(F) and (G)

---

the true and correct valuation . . . ."); **Palmer v. Louisiana Forestry Commission**, 97-0244 (La. 10/21/97), 701 So.2d 1300, 1303 ("When the legislature has declared its will and fixed a 'primary standard,' agencies such as the Commissions in the case sub judice have the power to 'fill up the details.'").

6

of the Administrative Procedure Act." **Panacon v. Louisiana Tax Commission**, 97-2093, p. 4 (La. App. 1 Cir. 1/8/99), 747 So.2d 572, 573-74; **Kansas City Southern Railway Company v. Louisiana Tax Commission**, 95-2319, p. 3 (La. App. 1 Cir. 6/28/96), 676 So.2d 812, 815.  See also La. R.S. 49:967(A) ("Chapter 13 [the Administrative Procedure Act] of Title 49 of the Louisiana Revised Statutes of 1950 shall not be applicable to the Board of Tax Appeals, the Department of Revenue, with the exception of the Louisiana Tax Commission that shall continue to be governed by this Chapter in its entirety, unless otherwise specifically provided by law . . . .").

Review is confined to the administrative record established before the Commission.  See La. R.S. 49:964(F); **Panacon v. Louisiana Tax Commission**, 97-2093 at p. 4, 747 So.2d at 574.  See also **Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board**, 01-0185, p. 7 (La. 10/16/01), 797 So.2d 656, 661 (holding that review of an administrative decision is limited to the administrative record and a district court may not receive evidence when sitting as an appellate court).

Pursuant to La. R.S. 49:964(G), the reviewing court may only reverse or modify the agency decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:  (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the reviewing court.  The reviewing court shall make its own determination and conclusions of fact by a preponderance of evidence, based upon its own evaluation of the record reviewed in its entirety upon judicial review; however, when the agency had the opportunity to judge the

7

credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues. La. R.S. 49:964(G).

In its review of the Assessor's decision to apply the market approach, in this case, to value Opportunity Homes' affordable housing development, the Commission concluded that the Assessor erred in failing to utilize the recommended income approach. We first examine the administrative record established before the Commission to ascertain whether there was a preponderance of the evidence to support the Commission's conclusion.

The Commission stated in both of its August 6, 2015 written decisions that the "pre-filed" exhibits of the Assessor and Opportunity Homes were "entered into the record." Also, the Commission's staff appraiser,[4] Randy Harrington, testified at the January 13, 2015 hearing before the Commission, and his written appraisals of the Opportunity Homes property for the 2014 and 2015 tax years, consisting of 27 pages each, were introduced into evidence.[5]

Mr. Harrington's appraisal reports described the property as an "LIHTC Rent Restricted Scattered Site Residential Housing Complex,"[6] consisting of 32 buildings

---

[4] See La. R.S. 47:1835(A) ("The tax commission may appoint or employ all necessary agents, assistants, auditors, clerks, inspectors, investigators, or other experts and employees required in the defense, determination, or development of assessments, and assessment procedures, and valuation of property, including the hiring of experts such as legal counsel and analysts, auditors, appraisers, and witnesses . . . .").

[5] Although Mr. Harrington was a member of the Commission's staff, counsel for Opportunity Homes submitted Mr. Harrington's appraisals into evidence during the January 13, 2015 Commission hearing, stating, "We would ask that the commission accept [on] appeal as evidence, the appraisals of Mr. Harrington for both . . . '14 and '15 . . . ." There was no objection by opposing counsel.

[6] The Assessor argues that, since Opportunity Homes failed to introduce the tax credit regulatory agreement ("TCRA") into evidence before the Commission (only proffering it in the district court), there is no record evidence establishing what restrictions encumber the subject property. However, the factual information appearing in Mr. Harrington's appraisals establishes the property as a low income housing tax credit ("LIHTC") complex and points out some of the resulting restrictions on the property. In addition, the petition for judicial review, filed by the Assessor in the district court, explicitly describes the nature of, and restrictive agreements relative to, the property, including its LIHTC status, the land use restriction agreement ("LURA") (which the Assessor therein acknowledges "depresses the rent that can be charged and, therefore, reduces the benefits of

8

and 54 rental units, used as low income multi-family housing. With respect to the methodology used in his appraisals, each appraisal report stated:

> The *sales comparison* approach will not be utilized in establishing an estimated market value in this report. The market for Low Income Housing Tax Credit (LIHTC) complexes differ[s] from typical residential investment properties, due to inherent restrictions on income return, and the inability of the property owners to sell the projects without the expressed approval of the federal government and then only after certain regulatory requirements have been satisfied. These government subsidized projects present circumstances not normally found in other similar commercial properties.[7]

> \* \* \*

> The *Income Approach to Value* is the most reliable indicator of value for income producing properties and should be relied upon, when detailed financial income and expense is available and/or market data information is available. The income approach to value in this appraisal report will utilize the actual gross income, actual rents collected and expenses from the income/expense statements supplied by the taxpayer. Due to the restricted rents enforced on the subject property the Income Approach to Value is the only applicable approach utilized in the report.

> \* \* \*

> The Sales comparison approach to value was *not* utilized in the analysis. There have been no sales of LIHTC properties that we were able to locate within the state. According to the information gathered for this assignment, these properties are not typically sold due to the regulations and restrictions associated with these type properties.

In addition to a location map, subject photograph, neighborhood, site and demographics statements, statements of project parameters and definitions, Mr.

---

ownership") and the fact that a TCRA was executed.

[7] The extensive rules, regulations, and restrictions applicable to LIHTC property are set forth in 26 U.S.C. § 42. Pursuant to 26 U.S.C. § 42, a housing project may qualify for LIHTC status, if, in addition to meeting other requirements, a certain minimum percentage "of the residential units in such project are both rent-restricted and occupied by individuals whose income is 60 percent or less of area median gross income," and the property must remain affordable for at least 30 years (consisting of a 15-year "compliance period" and a 15-year "extended use period"). See 26 U.S.C. § 42(g). In addition, "scattered site projects" (buildings that would, but for their lack of proximity, be treated as a project for purposes of § 42) are required to be so treated if dwelling units in each of the buildings are rent-restricted residential rental units. See 26 U.S.C. § 42(g)(7). Further, tax credits may be "recaptured" on an LIHTC property if the building is disposed of, unless "it is reasonably expected that such building will continue to be operated as a qualified low-income building for the remaining compliance period," necessitating administrative approval of prospective purchasers. See 26 U.S.C. § 42(j). See also 26 U.S.C. § 42; 26 C.F.R. § 1.42-0 - 26 C.F.R. § 1.42a-1; and La. R.S. 40:600.91(A)(3)(b) (relative to the Louisiana Housing Corporation, which handles the local LIHTC approval process).

Harrington's appraisal reports also included his effective tax rate calculation, income analysis, reconciliation analysis, income and expense balance sheets provided by Opportunity Homes, and a statement of conditions and qualifications. Mr. Harrington certified in his appraisal reports that, for each tax year, the value of the Opportunity Homes property was $1,525,000. Mr. Harrington testified, during the January 13, 2015 hearing before the Commission, in support of his written appraisal reports.

None of the factual data that formed the basis for Mr. Harrington's 2014 and 2015 appraisals was directly contradicted by any evidence submitted by the Assessor. The only evidence presented to the Commission by the Assessor was "pre-filed" prior to the hearing and consisted of: (1) appeal documents for the 2014 tax year, consisting of three pages for each of the 32 housing units; one page was the Assessor's letter notifying Opportunity Homes of his appeal to the Commission and the other two pages were appeal documents for the 2014 tax year that were presented to the Commission, stating: the municipal address and square footage of each unit; the Assessor's 2014 tax year assessment; the amount per square foot utilized by the Assessor to calculate fair market value for each unit (ranging from $44.64 to $145.83 per square foot); a statement that the fair market value listed was "supported by comparable sales data;"[8] and the Board of Review's valuation for each unit; (2) a 2010 article from The Appraisal Journal, entitled "Appraising Low-Income Housing Tax Credit Real Estate; and (3) a 2006 "Advisory Opinion 14" from The Appraisal Foundation. No other evidence was presented by the Assessor during the Commission hearing, and the Assessor called no witnesses during the hearing.[9]

---

[8] Although the Assessor's appeal documents, submitted to the Commission, state that the amount per square foot utilized to calculate fair market value for each unit was "supported by comparable sales data," the "comparable sales data" was not submitted by the Assessor to the Commission.

[9] We note that, even though the January 13, 2015 hearing transcript witness list included Thomas Sandoz and Jacqueline Frick of the "Orleans Parish Assessor's Office" and the Commission's August 6, 2015 decisions stated that the testimony of Mr. Sandoz was submitted into evidence, the

10

The Assessor presented the Commission with no testimony or documentation to explain how he arrived at the assessment values for Opportunity Homes' 32 housing units, nor was any information revealed concerning the "comparable sales data" the Assessor used to support his valuations or whether the low-income housing tax credits were incorporated within that valuation.[10] In contrast, the lengthy and detailed appraisals made by Randy Harrington explained that there were no sales of low income housing tax credit ("LIHTC") complexes found within the entire state, which could be used as comparables to Opportunity Homes' LIHTC property. Mr. Harrington further explained that LIHTC complexes differ from typical residential investment properties because the rents are limited to below other rental property in the area, that sales of the LIHTC properties must be approved by federal government after regulatory requirements have been met, and that LIHTC properties are not typically sold because of the stringent regulations and requirements. However, because LIHTC properties are income-producing and financial data, including rents received and expense statements, are available, the income approach is the most reliable indicator of the value of such properties. Mr. Harrington further went into great detail as to how he derived the total fair market value of the Opportunity Homes LIHTC development, in the amount of $1,525,000 for both the 2014 and 2015 tax years.

It is important to keep in mind that a fair market value, as defined by La. R.S. 47:2321, supra, involves the determination of the highest price that a property could

---

hearing transcript reflects only that Mr. Sandoz was asked whether he had any comment, and he replied, "I don't have any."

[10] Counsel for the Assessor has asserted that the LIHTC credit amounts were not factored into his valuations of the Opportunity Homes property for purposes of the 2014 and 2015 assessments. However, we note that, in the Assessor's district court petition for judicial review, he alleged that the Commission decisions were erroneous in being "exclusive of all forms of income and benefits derived from the property, namely Low Income Housing Tax Credits." Further, one of the Assessor's assignments of error presented to the appellate court argued that LIHTC credit amounts should be included in the fair market value. See **Williams v. Opportunity Homes Limited Partnership**, 16-1185 at pp. 4-5, 220 So.3d at 191-92.

11

bring on the open market, which would be: (1) agreeable to a willing and informed buyer and seller; (2) under usual and ordinary circumstances; (3) allowing a reasonable time for finding a buyer with knowledge of all the legally available uses and purposes for which the property is best adapted. As applied in the case of the Opportunity Homes LIHTC properties, a well-informed buyer would be aware of all the federal regulations governing LIHTC properties, including the 30-year term during which the property would be rent-restricted to a minimum percentage of low-income tenants. Such impediments would negatively affect the value of the property and would render it so economically dissimilar to unrestricted and unregulated commercial property as to prohibit fair market value comparison. Because the market approach to determining fair market value, as stated in La. R.S. 47:2323(C)(1), involves the use of a comparison to "prices paid in actual market transactions and current listings" and there are no actual available market transactions involving LIHTC properties, it would be impossible to perform a market approach appraisal that produced an accurate fair market value for LIHTC properties.[11]

Thus, we conclude that the preponderance of the evidence supported the Commission's determination that the income approach was the appropriate method for determining the property values and that $1,525,000 was the correct fair market value for each tax year at issue. Having ruled on this basis, we find no need to address the remaining issues raised in the writ applications.

We find no conflict between La. R.S. 47:2323, providing parish assessors a choice of three generally recognized appraisal methods to utilize to determine fair market value (the market approach, the cost approach, and/or the income approach), and La. Admin. Code, Title 61, Part V, § 303(C), which recommends the use of the

---

[11] However, we do not foreclose the possibility that appropriate LIHTC property comparables might become available in the future so as to make a market approach analysis feasible at that time.

income approach for assessing affordable rental housing, such as the Opportunity Homes LIHTC development. This case turned purely on the facts established before the Commission, proving that the income approach was the more appropriate method for determining fair market value in this case. Consequently, the appellate court erred in holding that the Commission's decisions were in violation of statutory provisions, in excess of its authority, based upon unlawful procedures, and legally incorrect.[12]

## DECREE

Accordingly, we reverse the appellate court rulings and reinstate the Louisiana Tax Commission decisions, modifying the Orleans Parish Assessor's assessments of the fair market value of the Opportunity Homes Limited Partnership property to $1,525,000 for both the 2014 and 2015 tax year.

**APPELLATE COURT JUDGMENT REVERSED; TAX COMMISSION DECISIONS REINSTATED**.

---

[12] The appellate court stated, in pertinent part: "A plain reading of the statute supports the Assessor's position that he may use any of the three (3) generally-accepted methodologies in assessing affordable housing." **Williams v. Opportunity Homes Limited Partnership**, 16-1185 at p. 9, 220 So.3d at 194.

13

# SUPREME COURT OF LOUISIANA

## No. 2017-C-0955

## CONSOLIDATED WITH

## No. 2017-C-0957

## ERROL G. WILLIAMS, ASSESSOR, PARISH OF ORLEANS

## V.

## OPPORTUNITY HOMES LIMITED PARTNERSHIP AND LOUISIANA TAX COMMISSION

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS*

**WEIMER, J.**, additionally concurring.

I additionally concur in the opinion to emphasize this result is based on the limited record and the briefs and arguments of the parties to this litigation. See La. Const. art. VII, § 18.