Judgment rendered September 9, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,948-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

BOBBY W. EDMISTON, IN HIS                    Plaintiff-Appellant
OFFICIAL CAPACITY AS
BOSSIER PARISH ASSESSOR

versus

LOUISIANA RIVERBOAT                          Defendants-Appellees
GAMING PARTNERSHIP D/B/A
DIAMOND JACKS CASINO &
RESORT AND THE LOUISIANA
TAX COMMISSION

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 155,448

Honorable Edward Charles Jacobs, Judge

* * * * *

WIENER, WEISS & MADISON                      Counsel for Appellant,
By: Reid A. Jones                            Bobby W. Edmiston in
-and-                                        his official capacity as
BRIAN A. EDDINGTON                           Bossier Parish Assessor

KEAN MILLER LLP                              Counsel for Appellees,
By: Scott L. Zimmer                          Louisiana Riverboat
                                             Gaming Partnership d/b/a
                                             Diamond Jacks Casino &
                                             Resort

FAIRCLOTH MELTON SOBEL          Counsel for Appellee,
& BASH, LLC                     Louisiana Tax
By: Franklin "Drew" Hoffman     Commission
-and-
ROBERT D. HOFFMAN, JR., APLC

* * * * *


Before PITMAN, STONE, and STEPHENS, JJ.

**STEPHENS, J.**

This appeal involves a challenge by the Louisiana Riverboat Gaming Partnership d/b/a DiamondJacks Casino and Resorts ("DiamondJacks") regarding the valuation of its property and resulting 2017 assessment of ad valorem taxes by Bobby W. Edmiston, in his Official Capacity as Bossier Parish Assessor (the "Assessor"). The Louisiana Tax Commission (the "LTC") ruled in favor of DiamondJacks. On review before the Twenty-Sixth Judicial District Court, Parish of Bossier, State of Louisiana, the district court entered judgment and reversed in part, affirmed in part, remanded to the Assessor for reappraisal, and remanded to the LTC to review the correctness of the Assessor's revised assessment. The Assessor appeals, and the LTC answers the appeal.

## FACTS AND PROCEDURAL HISTORY

This appeal stems from the valuation and resulting assessment by the Assessor of property owned by DiamondJacks in Bossier Parish, Louisiana. Specifically at issue is the correctness of the Assessor's ad valorem tax assessment for 2017 on property owned by DiamondJacks—a riverboat casino and hotel in Bossier Parish. Also part of DiamondJacks' property is an employee parking lot and R/V lot. All of the property sits on approximately 37 acres.[1]

The Assessor valued DiamondJacks' property at $69,967,020 (the "2017 assessment"). Of significance, DiamondJacks had previously challenged the 2013 assessment by the Assessor. The LTC ultimately reviewed that assessment, and its staff appraiser, Brian Eubanks, prepared an

---

[1] The property is divided across four tax bills and were all appealed to the LTC, which consolidated the four into one appeal.

appraisal of the same property at issue in this appeal. In its 2015 decision regarding that challenge, the LTC adopted Eubanks' appraisal, and it was undisputed by the Assessor, who used it for his 2013 assessment. Subsequently, the 2017 assessment was calculated using that appraisal by Eubanks, and broken down by the various parcels consisting of the following valuations:

| | |
|---|---|
| Casino Pavilion and Hotel: | $51,356,000 |
| Employee Lot: | 2,597,100 |
| R/V Lot: | 4,924,700 |
| Personal Property: | 11,089,220[2] |
| Total: | $69,967,020 |

DiamondJacks challenged the 2017 assessment to the Bossier Parish Board of Review, which affirmed the Assessor's assessment.

After the board of review affirmed the Assessor, DiamondJacks challenged the 2017 assessment to the LTC, arguing the Assessor erred in the assessment, and submitted the correct valuations should be $27,000,000—broken down as follows:

| | |
|---|---|
| Casino Pavilion and Hotel: | $17,092,518 |
| Employee Lot: | 1,211,051 |
| R/V Lot: | 2,296,431 |
| Personal Property: | 6,400,000 |
| Total: | $27,000,000 |

At an open meeting and appeal hearing on December 6, 2017, the LTC considered testimony and evidence submitted on behalf of the Assessor and DiamondJacks. The LTC considered the Assessor's valuation, as well as the testimony of two additional appraisers who valued the property: Edwin Litolff on behalf of DiamondJacks and Eubanks, the LTC's own staff appraiser. Among other witnesses, the Assessor also testified.

---

[2] The value of the personal property is not an issue in this appeal.

On February 26, 2018, the LTC filed its Reasons for Decision, wherein it concluded the property should be valued at $36,489,220. In using an income approach, the LTC assigned the following fair market value of the property as follows:

| | |
|---|---|
| Casino Pavilion and Hotel: | $22,271,000 |
| Employee Lot: | 1,096,000 |
| R/V Lot: | 2,033,000 |
| Personal Property: | 11,089,220 |
| Total: | $36,489,220 |

In coming to this conclusion, the LTC reasoned that the Assessor, in reaching the 2017 assessment, erroneously utilized only the cost approach with an insufficient obsolescence factor. Citing La. R.S. 47:2323, the LTC stated that Louisiana law requires all three valuation approaches (market, cost, and/or income) be considered. Additionally, the LTC's valuation of the property utilized a 65% obsolescence factor. Notably, the LTC rejected the appraisals submitted by Eubanks, noting:

> The arbitrary average of two value indicators, without further explanation and justification, is improper and an unreliable appraisal methodology. However, the underlying data obtained and used by Mr. Eubanks was largely correct.

The LTC valued the property as a Tier III property, despite the emphatic testimony of Eubanks that the property was more probably a Tier II property, even at the level of its deterioration. Without further discussion, the LTC assigned the Tier III designation "because of the poor condition and age of the property."

In response to the LTC's decision, the Assessor sought judicial review in the Twenty-Sixth Judicial District Court for the Parish of Bossier. After a

3

hearing on the matter, the district court issued its opinion and rendered a judgment dated February 11, 2019. That judgment ruled as follows:

> [B]ecause the LTC acted beyond the scope of its authority by independently assessing the property and using a valuation approach that does not reliably and uniformly value casino properties, the decision by the LTC be and is hereby REVERSED. However, the findings of the LTC in regards to the obsolescence of DiamondJacks' property and the value of DiamondJacks' personal property be and are hereby UPHELD.

> [The Assessor] is hereby ordered to reappraise DiamondJacks' property as required under La. Const. art. 7, § 18(F) and La. R.S. 47:2331.

> [T]hese proceedings are remanded to the LTC to review the correctness of [the Assessor's] assessment using the cost approach and for a re-determination of the fair market value and assessment of these properties in accordance with law[.]

This appeal by the Assessor ensued, and he alleges four assignments of error:

1) The district court erred in affirming the LTC's findings on obsolescence of DiamondJacks' Casino Pavilion and Hotel;

2) The district court erroneously failed to address (and reverse) the LTC's findings regarding the valuation of DiamondJacks' other land—the R/V Lot and Employee Lot;

3) The district court erroneously remanded the matter to the LTC for further proceedings; and,

4) The district court erred in ordering the Assessor to reassess the DiamondJacks properties.

The LTC has answered the appeal, and it argues:

1) The district court erred in concluding the LTC "acted beyond the scope of its authority by independently assessing the property and using a

4

valuation approach that does not reliably and uniformly value casino properties"; and,

2) Whereas the district court correctly upheld the LTC's determination on obsolescence, its judgment was in error in all other respects.

## DISCUSSION

### Legal Principles and Standard of Review

Each assessor shall gather all data necessary to properly determine the fair market value of property subject to taxation within his respective parish. In securing this data, the assessor may employ the use of self-reporting forms by property owners. La. R.S. 47:2324. When an officer charged with that duty has completed an assessment for the taxation of property which is subject to taxation within his jurisdiction, there results an assessment which is presumed to be valid unless and until the taxpayer proves otherwise. *Gisclair v. Louisiana Tax Com'n*, 2009-0007 (La. 6/26/09), 16 So. 3d 1132; *Odom v. Southern Natural Gas Co.*, 46,598 (La. App. 2d Cir. 8/17/11), 72 So. 3d 437, 442.

Although not an assignment of error, the parties pay specific attention to the applicable standard of review for this case. Louisiana Const. art. VII, § 18(E), states, "The correctness of assessments by the assessor shall be subject to review first by the parish governing authority, then by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance with procedures established by law." *See also Williams v. Opportunity Homes Ltd. P'ship*, 2017-0955 (La. 3/13/18), 240 So. 3d 161, 165. Judicial review of decisions of the (LTC) is authorized by La. R.S. 47:1998(A)(1); the extent of that review is governed by La. R.S. 49:964(F)

5

and (G) of the Administrative Procedure Act ("APA"). *Id.* at 165, citing

*Panacon v. Louisiana Tax Com'n*, 97-2093 (La. App. 1 Cir. 1/8/99), 747 So.

2d 572, 573-74; *Kansas City Southern Ry. Co. v. Louisiana Tax Com'n,* 95-

2319 (La. App. 1 Cir. 6/28/96), 676 So. 2d 812, 815.

> Louisiana R.S. 47:1992(D) provides:
>
> All determinations by the board of review shall be final unless appealed to the tax commission. Any taxpayer or assessor dissatisfied with the determination of the board of review ***may appeal to the tax commission in accordance with rules and regulations established by the tax commission.*** (Emphasis added).

At the adjudicatory hearing, the LTC acts as the trier of fact. *Holiday*

*Bossier Ltd. P'ship v. Louisiana Tax Com'n,* 574 So. 2d 1280, 1285 (La.

App. 2 Cir. 1991), *writ denied*, 578 So. 2d 136 (La. 1991). A party who is

dissatisfied with the LTC's decision may file suit for judicial review in the

district court, and in reviewing the LTC's determination, the district court

functions as an appellate court. *Odom*, *supra* at 443.

> As stated by the Louisiana Supreme Court in *Williams, supra* at 166:
>
> Review is confined to the administrative record established before the LTC. *See* La. R.S. 49:964(F)[.]
> (Citation omitted.)
>
> Pursuant to La. R.S. 49:964(G), the reviewing court may only reverse or modify the agency decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the reviewing court. The reviewing court shall make its own determination and conclusions of fact by a preponderance of evidence, based upon its own evaluation of the record reviewed in its entirety upon judicial review; however, when the agency had the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the

6

reviewing court does not, due regard shall be given to the agency's determination of credibility issues. La. R.S. 49:964(G).

Once the district court renders a final judgment, an aggrieved party may seek review by appeal to the appropriate appellate court. On review of the district court's judgment, the court of appeal owes no deference to the factual findings or legal conclusions of the district court. *Jones v. Southern Natural Gas Co.*, 46,347 (La. App. 2 Cir. 4/13/11), 63 So. 3d 1080, 1087-88, *writ not cons.*, 2011-1242 (La. 9/23/11), 70 So. 3d 800, and *writ not cons.*, 2011-1242 (La. 11/4/11), 75 So. 3d 911; *Smith v. State*, 39,368 (La. App. 2 Cir. 3/2/05), 895 So. 2d 735, *writ denied*, 2005-1103 (La. 6/17/05), 904 So. 2d 701. Thus, we review the findings and decision of the administrative agency and not the district court's decision. *Bailey v. Enervest Operating Co., LLC*, 45,553 (La. App. 2 Cir. 6/30/10), 43 So. 3d 1046, 1054.

## Analysis

Although the Assessor brings four assignments of error, we pretermit three arguments because we find he prevails under his first assignment—the LTC arbitrarily and capriciously assigned an obsolescence factor, which was in error.[3] Due to that error, the LTC's ultimate valuation of DiamondJacks' property and its decision was tainted as a whole, and it must be set aside. However, although we conclude the LTC's assigned obsolescence factor had no basis, we do agree with the LTC's conclusion that the Assessor arbitrarily refused to consider additional obsolescence in his 2017 assessment, which was an abuse of the Assessor's discretion. Thus, this appeal involves the

---

[3] As a result of the following reasons, we also pretermit discussion of the LTC's arguments made in its answer to appeal.

7

quandary: a scenario where both the Assessor's 2017 assessment and the LTC's decision are incorrect.

In addressing the issues on appeal, the statutory role articulated in La. R.S. 49:964(G) should be emphasized: "the reviewing court may only reverse or *modify* the agency decision if substantial rights of the appellant have been prejudiced . . . . ***The reviewing court shall make its own determination and conclusions of fact by a preponderance of evidence, based upon its own evaluation of the record reviewed in its entirety upon judicial review***; however, when the agency had the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues." (Emphasis added).

The LTC found that DiamondJacks' property was depreciable by 65% for obsolescence, and the district court affirmed the LTC on this issue, which had the effect of greatly reducing the property's assigned value. This attempt by the LTC to correct the Assessor's 2017 assessment was in error. Initially, we note the Assessor's argument on appeal that the Louisiana Constitution mandates review of the correctness of his assessments only; however, there is an overwhelming abundance of jurisprudence to show that the LTC's decision is reviewed pursuant to the APA framework. *See e.g., Williams, supra* at 165. Considering *that* statutory scheme, specifically La. R.S. 49:964(G), we conclude the LTC's decision on obsolescence was "arbtitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Further, the district court erred in upholding that portion of the LTC's decision.

In its decision, in reference to Eubanks' appraisal, the LTC stated:

8

[T]he appraiser failed to factor and apply sufficient obsolescence considering the age and condition of the property and the overall economic market. Specifically, the LTC Staff appraiser applied a total of 30% obsolescence (27.48% economic and 2.52% functional) . . . . The LTC Staff appraiser grossly underestimated obsolescence. In fact, the Staff appraiser admitted during the hearing that the 30% figure was simply a round number and he couldn't provide any specific justification for this calculation. The physical condition of the property, which is evident from the photographs and witness testimony, along with DiamondJacks' declining revenue, as evidenced by the State Police Report, justify substantially more obsolescence be factored in preparing a cost approach to value. The LTC determines that a total obsolescence factor of 65% should be applied.

In *TBM-WC Sabine, LLC v. Sabine Par. Bd. of Review*, 2017-1189 (La. App. 3 Cir. 7/18/18), 250 So. 3d 1075, 1082, the court noted the LTC only "offered a cryptic explanation of its ruling" where it determined an additional 10% obsolescence should be added to the 12% provided by the Assessor to include a total of 22% additional obsolescence of the Assessor's value. The court reasoned:

This is a far cry from "an articulated analysis of the facts" as directed by the Louisiana Supreme Court . . . . [The LTC] offered no explanation of how it arrived at its conclusion and seems to be substituting its discretion for the parish assessors' which it is not constitutionally empowered to do. (Citation omitted.)

We have reviewed the record in this matter and recognize the testimony and evidence regarding both the physical deterioration of DiamondJacks' property as well as the downturn in the Shreveport/Bossier gaming market, which evidently has resulted in decreased revenue to DiamondJacks. However, whereas the LTC dismisses Eubanks' detailed appraisal and the 30% obsolescence factor contained therein as lacking "specific justification," it proceeds to pluck a figure out of thin air itself. The LTC points to the property's physical condition and declining revenue,

but gives no basis for quantifying those components in assigning its figure. There is no articulated, precise computation justifying the 65% obsolescence factor assigned by the LTC and nothing in the administrative record to support that precise figure. Notably, a parish assessor's assessment is presumed to be valid unless and until the taxpayer proves otherwise. *Odom, supra* at 442. Furthermore, the burden is on the taxpayer to support a claim of additional obsolescence. *Jones v. S. Nat. Gas Co., supra*. The LTC provides no explanation of how DiamondJacks proved it was entitled to 65% obsolescence or quantified the submitted evidence to achieve a 65% obsolescence factor—over twice what Eubanks calculated and three times what the Assessor calculated. The LTC articulates only a cryptic explanation for its determination. Thus, we conclude that the LTC's decision to reverse the Assessor and its order to apply a 65% obsolescence factor was arbitrary, capricious, and not supported or sustainable by a preponderance of the evidence as reviewed by this court. Because the LTC's obsolescence factor lacks specific justification, it is incorrect on its face and must be reversed for being "arbitrary or capricious" as required pursuant to La. R.S. 49:964(G).

Considering our conclusion on the obsolescence factor, as an effect there are certain observations regarding the LTC's decision and the record before us. First, it is notable that on July 8, 2015, the LTC issued a decision and order in connection with a previous challenge by DiamondJacks regarding the 2013 assessment of the same property. In that decision, the LTC cited the appraisal by Eubanks, concurred with his findings and calculations, and set a fair market value for the property of $51,356,000. This value was not challenged by either DiamondJacks or the Assessor at the

10

time.  Second, the Assessor's 2017 assessment is based on a total appraised value for the property of $51,356,000 and lists the appraiser as Brian Eubanks; thus in assessing the DiamondJacks property in 2017, the Assessor, with no consideration of currently available data, evidently adopted and carried over his previous assessment.  Third, and of utmost significance, in the LTC's current decision it made the factual determination that "the underlying data obtained and used by Mr. Eubanks was largely correct"—although rejecting Eubanks' two appraisals

In our *de novo* review of the record and in light of our conclusion that the LTC erred in assigning a 65% obsolescence factor, we note the statutory authority allowing the LTC's decision to be modified by the reviewing court.  Notably, in rejecting the Assessor's 2017 assessment of the property, the LTC recognized and concluded that his decision to carry forward the 2015 assessment was "arbitrary and unsupported."  We agree.  Although it is clear that DiamondJacks failed to provide the Assessor with detailed financial information that might have aided in a more accurate valuation and assessment, the record shows that the LTC utilized publicly available information in 2015 and the same information in 2017.  Hence, had the Assessor exercised a modicum of effort in 2017 with the publicly available information, he should have been able to prepare a more accurate appraisal and assessment, which reflected the property's continued deterioration and the market downturn.  Thus, we agree with the LTC: the Assessor's 2017 assessment was invalid.

However, we do not agree with the LTC that the Assessor's use of only the cost approach was arbitrary and capricious, and the facts before the LTC actually belie the conclusion that his use of the cost approach was

11

invalid. For several reasons, we conclude the Assessor's use of the cost approach was proper, despite the fact that he ultimately achieved an incorrect conclusion. Initially, we observe that La. R.S. 47:2323 mandates, "[t]he fair market value of real and personal property shall be determined by the following generally recognized appraisal procedures: the market approach, the cost approach, *and/or* the income approach." (Emphasis added.) Although the LTC found the Assessor's use of only one approach (*i.e.*, the cost approach) to be arbitrary and capricious, we do not interpret the statute to require use of all three approaches, but a choice of one of the three is clearly sufficient.

Next, the evidence indeed supports the use of the cost approach for the valuation of this property. According to the testimony of the Assessor and the Calcasieu Parish Assessor, the cost approach is typically used in appraising casino properties. Both explained that due to the unique nature of casinos, the market approach is generally unavailable because of the lack of comparable sales of casino properties. Further, they explained that the income approach requires significant financial data that casinos are reluctant to provide to assessors—and in this particular case was not provided to the Assessor. Thus, both assessors opined that the cost approach was the most usable in valuing casino property such as DiamondJacks.

The most compelling evidence regarding the valuation approach was the testimony of the LTC's own expert appraiser, Eubanks, whose data was considered "largely correct" by the LTC. He confirmed the testimony of the assessors regarding the use of the cost approach. As stated, Eubanks was charged by the LTC to prepare an appraisal of DiamondJacks' property in connection with its challenge to the LTC, and he prepared two appraisals of

12

the property. In his first appraisal, he used the cost approach and determined

the property value to be $46,932,000.[4] In the Reconciliation Analysis of

that first appraisal, he explained that the "three approaches to value were

considered in valuing the subject property," but why he ultimately utilized

the cost approach in his actual calculation. In fact, Eubanks testified he has

appraised other casinos using the cost approach—he has never used the

income approach before.[5] In using the cost approach, Eubanks noted it was

consistent with the rules and regulations compiled by the LTC governing the

valuation of property for assessment purposes. Further, Eubanks' cost

approach appraisal states:

> The Cost Approach . . . is based on the interpretation that an
> informed buyer would pay no more for one property than the
> cost to construct a substitute property with equal utility. It is
> very useful when the subject's building has . . . specialized
> uses, is new construction, or there are few sales. Since the
> subject property is a specialized use and no comparable
> improved sales were located, this approach to value was relied
> upon. This methodology is widely used by Louisiana assessors
> to value their casino properties.

Finally, we observe that Eubanks, the LTC's own appraiser, utilized the cost

approach in his prior appraisal of the property for the 2013 assessment—

again, a valuation that was accepted by all the parties.

Therefore, we agree with the district court's determination that the

LTC incorrectly valued the property using the income approach. There is

---

[4] At the hearing Eubanks testified he later received a request from his LTC supervisor to reappraise the property using the income approach, despite his opinion that the approach was not normally used for valuing casinos. Eubanks was instructed further to blend the findings of the cost and income approaches. Utilizing this methodology, Eubanks yielded a valuation of $38,260,000 for the property.

[5] Eubanks recounted initially approaching DiamondJacks' representative for financial information, but the requested records were not provided. Only after he was instructed to use the income approach did he receive some financial information from DiamondJacks, seemingly internal financial documents. Significantly, he never received CPA audited financial statements—the type of information Eubanks noted was routinely used to prepare an income approach appraisal.

considerable evidence to support the use of the cost approach for the valuation of DiamondJacks' property, and the district court's conclusion on this issue was not in error. The LTC incorrectly utilized the income approach to value DiamondJacks' property.

Regarding Eubanks' 2017 appraisal of the property, we note the following. The property was valued as of January 1, 2015, at $46,932,000, with $6,708,000 for the land and $40,224,000 for the improvements (casino pavilion and hotel). This valuation takes into account a 30% obsolescence factor. The condition of the property was "Below Average-Good," and the quality was "Above Average-Good-Class B." Whereas Eubanks utilized the cost approach for the valuation of the property's improvements, as for the valuation of the land, he was able to utilize the market (or sales comparison) approach, because several similar land sales were found for comparison. In his appraisal, Eubanks noted, "The intended user of this report is the Louisiana Tax Commission, the appellant, and the Bossier Parish Assessor's office *for the purpose of evaluating subject value for taxing purposes.*" (Emphasis added.)

Specifically regarding obsolescence, in preparing the 2017 appraisal, Eubanks explained he had inspected the property in 2014 for preparation of the previous appraisal. Eubanks included the observations from the 2014 inspection and elaborated in the 2017 appraisal—describing the changes in the property over the time period. The 2017 appraisal took into account signs of depreciation in the property since the prior inspection and appraisal. For example, among other problems, his 2017 appraisal notes that more rooms were not rentable and the "entire third and fourth floor are now closed to guests." His appraisal also described the portable chiller for the

14

malfunctioning air conditioning. In his discussion on the economic obsolescence of the property, Eubanks analyzed financial records from the Louisiana Gaming Control Board, as he did in the previous appraisal. He concluded:

> It is evident that DiamondJacks is losing revenue and market share both in the state and in the local gaming markets since the previous appraisal. The Shreveport/Bossier market in my opinion cannot support six casinos due to a downturn in the economy and competition from Oklahoma casinos. It is my opinion that DiamondJacks is capturing the bottom end of the market in the Shreveport/Bossier area. I have applied a 27.48% economic obsolescence and included 2.52% functional obsolescence or 30% combined would be necessary.

Thus, after applying a 30% obsolescence factor, Eubanks concluded DiamondJacks' property had a fair market value of:

| | |
|---|---|
| Land | $ 6,708,000 |
| Casino Pavilion and Hotel | $40,224,000 |
| Total | $46,932,000 |

Considering the administrative record before us, we conclude the LTC's decision was incorrect regarding both the arbitrary and capricious assignment of a 65% obsolescence factor, as well as the determination that the Assessor should have utilized an income approach for valuation. Neither determination was factually supported by this record, which actually supports modifying the LTC's decision and adopting the cost approach appraisal by its staff appraiser. Thus, the LTC shall set the value of DiamondJacks' property pursuant to its appraisal by Brian Eubanks dated October 16, 2017, and the LTC shall subsequently order the Assessor to prepare his 2017 assessment of the property pursuant to that valuation.

## CONCLUSION

Considering the foregoing, the judgment of the district court is reversed in part, affirmed in part, and vacated in part. As the judgment

15

pertains to the valuation approach used by the LTC, we affirm the district court.  As the judgment pertains to the obsolescence factor used by the LTC, we reverse the district court.  Finally, as to the remaining dispositions of the judgment, it is vacated.  The matter is remanded to the LTC, with instructions that it modify its decision, adopting the October 16, 2017, appraisal of its staff appraiser in its entirety (including the stated obsolescence factor) and the valuation of the property concluded therein.  Further, upon modification of its decision, the LTC shall direct Bobby W. Edmiston, in this official capacity as Bossier Parish Assessor, to prepare his 2017 assessment of DiamondJacks' property.  Pursuant to La. R.S. 47:1998(C), no costs are assessed to the Assessor or the LTC.

**REVERSED IN PART, AFFIRMED IN PART, VACATED IN PART; AND REMANDED WITH INSTRUCTIONS.**